NOT ORIGINAL DOCUMENT
01/15/2021 11:06:48 AM
84997-7

COMMONWEALTH OF KENTUCKY
FRANKLIN CIRCUIT COURT
DIVISION ___
CIVIL ACTION NO. _____
*Electronically Filed*

GOLBERG SIMPSON, LLC, GS CLOSING, LLC                          **PLAINTIFF**

v.          **COMPLAINT FOR DECLARATION OF RIGHTS
AND DAMAGES FOR TORTIOUS CONDUCT**

EVANSTON INSURANCE COMPANY

Serve:
Kentucky Department of Insurance
Commissioner, Sharon P. Clark
500 Mero Street
2 SE 11
Frankfort, KY 40601

                                          **DEFENDANTS**

MARKEL SERVICE, INCORPORATED.

Serve:
CT Corporation System
306 W. Main St., Ste. 512
Frankfort, KY 40601

** ** ** ** ** ** ** ** ** **

Come the Plaintiffs and for their complaint state as follows:

1.      Goldberg Simpson, LLC ("Goldberg Simpson") is a Kentucky LLC with its principal place of business at 9301 Dayflower Street, Prospect, Kentucky 40059.

2.      GS Closing, LLC ("GS Closing") is a Kentucky Corporation with its principal place of business at 9301 Dayflower Street, Prospect, Kentucky 40059.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

COM : 000001 of 000009

**EXHIBIT 1**

3.    Both Goldberg Simpson and GS Closing are Named Insureds in renewal of a surplus lines insurance policy (L809630) with Evanston Insurance Company ("Evanston"). This lawyers professional liability insurance policy ("The 2019-20 Policy") is attached as Exhibit 1.

4.    Markel Services, Inc. ("Markel") is the claims service manager for Evanston. It is domiciled in the state of Illinois.

5.    Evanston Insurance Company ("Evanston") is an insurance company unlicensed in Kentucky but authorized to do business as a surplus lines carrier in Kentucky.

6.    According to the Evanston Insurance Company Policy at hand, Evanston may be served upon the "Commissioner or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy…."

7.    The 2019 Policy has a policy period of July 1, 2019 to July 1, 2020 and provides as follows:

**SECTION II – INSURING AGREEMENT**

**A.    Professional Liability Coverage**
The Company shall pay on behalf of the **Insured** all sums in excess of the Deductible stated in the Declarations, which the **Insured** becomes legally obligated to pay as **Damages** as a result of a **Claim** first made against the Insured during the Policy Period or the Extended Reporting Period, if applicable, and reported to the Company pursuant to Section **VIII** – Claims, **A**. Claim Reporting Provision, by reason of:
　　1.  A **Wrongful Act** arising out of **Professional Legal Services**; or
　　2.  **Personal Injury** committed by the **Insured**;
　　provided:
　　　　a.  The entirety of the **Wrongful Act** or **Personal Injury** happened during the **Policy Period** or on or after the **Retroactive Date**; and
　　　　b.  Prior to the effective date of this policy no **Insured** had any knowledge of such **Wrongful Act** or **Personal Injury**, or any fact, circumstance, situation or incident which would lead to a

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

COM : 000002 of 000009

2

reasonable person in the **Insured's** position to conclude that a **Claim** was likely.

(See Exhibit 1, Professional Liability Policy, page 1 of 11).

        8.    In Subsection VIII of the policy, there is a discovery clause which gives the Plaintiffs the option to report any awareness of a specific Wrongful Act which is reasonably expected to result in a Claim. This discovery clause provides that the "insured may provide written notice to the company and by providing such written notice to the company can assure themselves that any claims subsequently made against the insured arising out of such wrongful act will be deemed for the purposes of insurance to have been first made on the date when the written notice was received by the company." This allows the insured to give notice of the wrongful act, which was not yet a claim, and assure themselves that if a claim materializes it will be covered under that policy year, not a subsequent policy year, if it arises later. The specific provision is as follows:

> **B.**    **Discovery Clause**
> If during the **Policy Period**, the **Insured** first becomes aware of a specific **Wrongful Act** or **Personal Injury** which is reasonably expected to result in a Claim within the scope of coverage of this policy, then the **Insured** may provide written notice to the Company containing the information listed below. If such written notice is received by the Company during the **Policy Period**, then any Claim subsequently made against the Insured arising out of such **Wrongful Act** or **Personal Injury** will be deemed for the purpose of this insurance to have been first made on the date on which such written notice is first received by the Company.
>
> It is a condition precedent to the coverage afforded by this Discovery Clause that written notice shall be given to the Company containing the following information:
> 1. The description of the specific Wrongful Act or Personal Injury;
> 2. The date on which such Wrongful Act or Personal Injury took place;
> 3. The injury or damage which has or may result from such Wrongful Act or Personal Injury;
> 4. The identity of any persons or organization subject to such injury or damage; and
> 5. The circumstances by which the Insured first became aware of such Wrongful Act or Personal Injury.

(See Exhibit 1, Professional Liability Policy, page 7 of 11).

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

COM : 000003 of 000009

9.      The policy also provides for the reporting of a Claim. The policy contains a specific definition of "Claim" and "Damage" as follow:

**C.      Claim** means the **Insured's** receipt of either:
1. A written demand for **Damages**; or
2. The service of suit or institution of arbitration proceedings against the **Insured**.

(See Exhibit 1, Professional Liability Policy, page 2 of 11).

10.      Damages, as that term is used in the above paragraph, is defined in term in the policy and that definition must be used to the exclusion of all other alternative definitions. As used in the above paragraph, Damages means only the following:

**D.      Damages** means the monetary portion of any judgment, award of settlement, and includes punitive or exemplary damages or any multiplied portions of damages in excess of actual damages, including trebling of damages, to the extend such damages are insurable by law;

(See Exhibit 1, Professional Liability Policy, Amendment Form MELA 2207 04 17).

11.      The policy further provides that Claims must be reported in the following matter and under the following conditions:

**SECTION VIII – CLAIMS**
**A.  Claim Reporting Provisions**
1. The **Insured** shall give to the Company written notice as soon as practicable of any **Claim** first made against the Insured during the **Policy Period** or the Extended Reporting Period, if applicable, but in no event later than:
    a.  60 days after expiration of the **Policy Period**; or
    b.  The expiration of the Extended Reporting Period, if applicable.
Such **Claim** must be reported to the address stated in the Company Reporting Policyholder Notice attached to this policy.
2. Subject to Paragraph 1, in the event suit is brought or arbitration is instituted against the **Insured**, the **Insured** will immediately forward to the address stated in the Company Reporting Policyholder Notice attached to this policy, every demand, notice, summons or other process received by the **Insured** or by the **Insured's** representative.

(See Exhibit 1, Professional Liability Policy, page 7 of 11).

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

COM : 000004 of 000009

4

12.     On or about January 10, 2019, Plaintiff Goldberg Simpson received an email from an attorney, Joseph Blanner ("Blanner 1 Communication") who was representing a former client of Goldberg Simpson. In that communication, Mr. Blanner states, among other things, as follows:

> "…Given the exposure which Synergy faces as a result of the pending counterclaims, coupled with the prospect of not being able to enforce the pending lien, Synergy is looking to your firm, as the party responsible for any mistakes in the lien and the filing procedures, to make it whole with regard to its lien claim, and to defend it and hold it harmless with regard to the counterclaim filed by Origin/Brookside and Commerce Bank. Synergy is also looking to you to pay the additional attorney's fees incurred by it as a result of the foregoing."

(See Exhibit 2, Blanner 1, Communication, page 2).

13.     The Blanner 1 Communication could be construed as an alleged Wrongful Act under the definition of the policy. However, the Blanner 1 Communication was not notice of a "Claim" as defined in the 2019-20 Policy because there has been no judgment, award or settlement in the litigation pertaining to the lien which is the subject of the Blanner 1 Communication.

14.     Later, on May 29, 2020, Joseph C. Blanner sent a communication ("Blanner 2 Communication") which states as follows:

> Due to the improper actions taken by your firm, my client was forced to settle its lawsuit against Origin for an amount far less than what the case was actually worth. Now that the underlying cause of action has concluded, much to the detriment of Synergy, Synergy hereby demands the sum of $586,227.39. This amount not only reflects what the underlying case was worth but had to forgo due to seeking and obtaining a release for actions caused by your firm, but no attorney's fees and costs associated with defending Synergy against the Counterclaim.

(See Exhibit 3, Blanner 2 Communication, page 2).

15.     At that time (May 29, 2020), there had been no service of a suit or institution of arbitration proceedings against the insured.

16.     There was no written demand for damages against the insured prior to May 29, 2020.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

COM : 000005 of 000009

5

17.     The insured promptly notified the Defendants of the Blanner 2 Communication.

18.     Contrary to the terms and conditions of the policy, Evanston Insurance Company and Markel have refused to defend or provide indemnity under the 2019-20 Policy for the reasons stated in a denial of coverage email dated July 28, 2020, which stated as follows:

> I have reviewed the materials you provided including the email exchange between Steve and Joe on January 10, 2019.  In that email, Joe sets forth, in great detail, the alleged mistakes with the lien and the lien release.  He then states that Synergy "is looking to your firm, as the party responsible for any mistakes in the lien and the filing procedures, to make it whole with regard to its lien claim, and to defend it and hold it harmless with regard to any counterclaim filed by Origin/Brookside and Commerce Bank.  Synergy is also looking to you to pay the additional attorney's fees incurred by it as a result of the foregoing." Your policy effective July 1, 2018 – July 1, 2019, which was in effect when you received the January 10, 2019 email, defines Claim as, among other things, "the **Insured's** receipt of . . . [a] written demand for **Damages**."  Damages is defined, in relevant part, as "the monetary portion of any judgment, award, or settlement."  The policy does not require the demand to contain the exact dollar amount of the Damages demanded.  Therefore, Synergy's demand that the firm "make it whole with regard to its lien claim . . . defend it and hold it harmless with regard to any counterclaim filed by Origin/Brookside and Commerce Bank . . . [and] pay the additional attorney's fees incurred by it as a result of the foregoing" constitutes a written demand for Damages.  As such, the Claim was first made during the 2018-2019 policy period and, for the insuring agreement to be triggered, should have been reported within 60 days after the expiration of the Policy Period, which was August 30, 2019 (Section II A.).  Because the Claim was not reported by August 30, 2019, the reporting requirement of the Insuring Agreement was not satisfied and there is no coverage for the Claim.  The notice-prejudice rule does not apply to claims made policies such as this.

(See Exhibit 4, Denial Email, page 1).

19.     The Defendant's position is incorrect and in direct conflict with the clear language of the policy. An actual controversy exists over whether the coverage is applicable with Markel's insurance policy.

20.     Plaintiff alleges that coverage does exist under their policy of insurance and the insurance company has denied same. Plaintiff has an interest in the contracts of insurance and the obligations therewith to indemnify the  insured under the policy. Thus, there is an actual

NOT ORIGINAL DOCUMENT
01/15/2021 11:06:48 AM
84997-7

controversy and a declaration of rights have been sought, and is by this pleading sought pursuant to KRS 418.040, *et al*.

21.     This Court should declare that Defendant Evanston must provide defense and indemnity coverage for any claims made and discussed in the Blanner Communications under the 2019-20 Policy and also must hold that the notice was accordingly timely made.

**Bad Faith and Unfair Claims Settlement Practices Act**

22.     Plaintiff adopts by reference and incorporates herein each and every one of the preceding allegations as set forth fully herein, and further alleges as follows:

23.     Defendants had a duty to act in good faith and to deal fairly with the Plaintiffs under KRS 304.2-230, the Unfair Claims Settlement Practices Act ("UCSPA"). Evanston delegated it's duties to Markel contractually and there by making them both jointly responsible to Plaintiff for fulfilling the duties.

24.     Defendants violated the UCSPA as set forth in KRS 304.12-230 (particularly subsections (2), (3), (4), (5) (6), (7) and (14)) because they: (i) failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under the insurance policies issued by it; (ii) failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (iii) refused to pay Plaintiff's claim without conducting a reasonable investigation based upon all available information; (iv) did not attempt in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff's claim after liability had become reasonably clear and damages became reasonably certain; (v) compelled Plaintiff to institute litigation to recover amounts due under an insurance policy; and (vi) failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or law for denial of Plaintiff's claim or for the offer of a compromise settlement.

NOT ORIGINAL DOCUMENT
01/15/2021 11:06:48 AM
84997-7

25.     As a direct and proximate result of Defendants' violations of the UCSPA, Plaintiff has sustained damages, including but not limited to damages for business loss, emotional distress, mental anguish, inconvenience of its owners who are insured also, attorney's fees, and costs.

26.     Defendants' violations of the UCSPA warrant an assessment of punitive damages in that they have acted with reckless disregard to the rights of the insured.

27.     The aforesaid conduct of Defendants, constitutes bad faith and a breach of their duty to act in good faith and to deal fairly with the Plaintiffs, as provided by common law.

28.     Defendants lacked a reasonable basis to deny and delay payment and provide coverage of Plaintiff's claim, and Defendants knew or acted recklessly as to whether a reasonable basis existed to deny or delay payment of her claim.

29.     As a direct and proximate result of Defendants' bad faith, Plaintiff has sustained damages, including but not limited to damages for business loss, emotional distress, mental anguish, inconvenience of its owners, attorney's fees, and costs. Plaintiffs are entitled to attorney's fees and 12% interest on delayed claim payments under KRS 304.12-235.

30.     Defendants conduct constitutes reckless disregard for the rights of Plaintiff, and constitutes gross negligence, warranting an assessment of punitive damages.

Wherefore, Plaintiff seeks:

1.     A declaration of rights under KRS 418.040 et al., that coverage is afforded to indemnify the insureds under each policy for the acts of their respective insured which are complained of herein, all of which may be an insured under each policy;

2.     Any and all other relief and damages to which it may appear entitled, including relief sought in this complaint; and

3.     Trial by jury.

8

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

COM : 000008 of 000009

NOT ORIGINAL DOCUMENT
01/15/2021 11:06:48 AM
84997-7

Respectfully submitted,


*/s/ M. Austin Mehr*
M. AUSTIN MEHR
**Mehr Fairbanks and Peterson
Trial Lawyers, PLLC**
201 West Short St., Ste. 800
Lexington, KY 40507
Telephone: (859) 225-3731
Fax: (859) 225-3830
*Attorney for Plaintiffs*

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

COM : 000009 of 000009

NOT ORIGINAL DOCUMENT
01/15/2021 11:08:06 AM
84997-7

**EVANSTON INSURANCE COMPANY**



**MARKEL®**

## LAWYERS PROFESSIONAL LIABILITY INSURANCE DECLARATIONS

THIS IS A CLAIMS MADE POLICY. THE AMOUNTS INCURRED AS DEFENSE EXPENSES WILL REDUCE THE LIMIT OF LIABILITY. PLEASE READ THIS ENTIRE POLICY CAREFULLY.

POLICY NUMBER: LA810338                              RENEWAL OF POLICY: LA809630

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)

GOLDBERG SIMPSON, LLC; GS CLOSING, LLC

9301 DAYFLOWER STREET
PROSPECT, KY 40059

Policy Period: From 07/01/2019        To 07/01/2020
          at 12:01 A.M. Standard Time at the address of the Named Insured shown above.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| Limits of Liability | |
|---|---|
| A.  Each Claim: | $5,000,000 |
| B.  Policy Aggregate: | $5,000,000 |

| Deductible | |
|---|---|
| A.  Each Claim: | $50,000 |
| B.  Aggregate: | $Not Applicable |

| Retroactive Date |
|---|
| Retroactive Date:    Full Prior Acts |

| Premium For Policy Period |
|---|
| $94,241 |

| Premium For Extended Reporting Period |
|---|
| 100% for 12 months; 150% for 24 months; 200% for 36 months; or 300% for 60 months |

| Producer Number, Name and Mailing Address |
|---|
| 13492
Cincinnati Intermediaries, Inc.
3975 Erie Avenue
Cincinnati, OH  45208 |

MDLA 2000 04 17                                                          Page 1 of 2

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000001 of 000032

NOT ORIGINAL DOCUMENT
01/15/2021 11:08:06 AM
84997-7

| **Endorsements** |
|---|
| Forms and Endorsements applying to this Policy and made part of this Policy at time of issue: |
| **SEE MDIL 1001 ATTACHED** |

**These Declarations, together with the Policy, Endorsement(s), Application, and any other attachments complete the above numbered Policy.**

Countersigned: _____ 07/19/2019 _____

DATE

By: _____

**AUTHORIZED REPRESENTATIVE**

This insurance has been placed with an insurer not
licensed to transact business in the Commonwealth
of Kentucky but eligible as a surplus lines insurer. The
insurer is not a member of the Kentucky Insurance
Guaranty Association. Should the insurer become
insolvent, the protection and benefits of the Kentucky
Insurance Guaranty Association are not available.

| | |
|---|---|
| Premium: | $94,241.00 |
| Municipal Tax: | $4,712.05 |
| Collection Fee: | $706.81 |
| Surcharge: | $1,696.34 |
| Surplus Lines Tax: | $2,827.23 |
| Total Premium: | $104,183.43 |

**MDLA 2000 04 17**

**Page 2 of 2**

INTERLINE
**POLICY NUMBER:** LA810338



# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| **FORM NUMBER** | **FORM NAME** |
|---|---|
| MJIL 1000 08 10 | Policy Jacket |
| MPIL 1007 03 14 | Privacy Notice |
| MPIL 1083 04 15 | US Treasury Dept's Office Of Foreign Assets Control ("OFAC") Notice |
| MPLA 2000 04 17 | Notice To Policyholders Company Reporting |
| MPLA 2001 08 18 | Markel's Designed Protection® Risk Management Resources For Law Firms |
| MIL 1214 09 17 | Trade Or Economic Sanctions |
| MDLA 2000 04 17 | Lawyers Professional Liability Declarations |
| MDIL 1001 08 10 | Forms Schedule |
| MELA 0001 04 17 | Lawyers Professional Liability Insurance Policy |
| MEIL 1200 01 10 | Service of Suit |
| MEIL 5409 09 10 | Nuclear Energy Liability Exclusion Endorsement |
| MELA 2201 04 17 | 25% Minimum Earned Premium Endorsement |
| MELA 2203 04 17 | Amendment of Insured - Title Agency |
| MELA 2205 02 19 | Split Retroactive Date |
| MELA 2207 04 17 | Amendment of Definition Of Damages |
| MELA 2210 04 17 | Choice Of Counsel |
| MELA 2211 04 17 | Subpoena Assistance |
| MELA 2219 04 17 | Crisis Management Expenses |
| MELA 2301 04 17 | Exclusion - Office Sharing |
| MELA 2308 04 17 | Exclusion - Specified Incident, Claim Or Suit |

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000003 of 000032

PROFESSIONAL LIABILITY



# EVANSTON INSURANCE COMPANY

## LAWYERS PROFESSIONAL LIABILITY INSURANCE

### THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the **Insured**, and subject to the terms, conditions and limitations of this policy, the Company and the **Insured** agree as follows:

### SECTION I – THE INSURED

**Insured**, either in the singular or plural, means:

A. The Named Insured stated in the Declarations or any **Predecessor Firm**;

B. Any lawyer who is a past, present or future partner, officer, director, principal, shareholder, shareholder of a partner, member or employee of the Named Insured solely for **Professional Legal Services**;

C. Any non-lawyer who is a past, current or future employee of the Named Insured or any **Predecessor Firm** solely while acting on behalf of the Named Insured or any **Predecessor Firm**;

D. Any person, professional corporation or limited liability professional corporation designated as **Of Counsel** solely for **Professional Legal Services**;

E. Any lawyer who is designated **Temporary Or Leased Professional** personnel solely for **Professional Legal Services**;

F. The heirs, executors, administrators, assigns and legal representatives of each **Insured** hereinabove in the event of death, incapacity or bankruptcy of such **Insured**, but only while acting within the scope of their duties as such on behalf of the Named Insured or of the **Insured's** estate.

### SECTION II – INSURING AGREEMENT

#### A. Professional Liability Coverage

The Company shall pay on behalf of the **Insured** all sums in excess of the Deductible stated in the Declarations, which the **Insured** becomes legally obligated to pay as **Damages** as a result of a **Claim** first made against the **Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, and reported to the Company pursuant to Section **VIII** – Claims, **A**. Claim Reporting Provision, by reason of:

1. A **Wrongful Act** arising out of **Professional Legal Services**; or

2. **Personal Injury** committed by the **Insured**;

provided:

a. The entirety of the **Wrongful Act** or **Personal Injury** happens during the **Policy Period** or on or after the **Retroactive Date**; and

b. Prior to the effective date of this policy no **Insured** had any knowledge of such **Wrongful Act** or **Personal Injury**, or any fact, circumstance, situation or incident which would lead a reasonable person in the **Insured's** position to conclude that a **Claim** was likely.

#### B. Supplementary Payments

1. **Disciplinary Proceedings**

a. Solely with respect to Section **I** – The Insured, **A.**, **B.**, **D.**, or **F.** (solely as **F.** applies to Section **I** – The Insured **A.**, **B.** or **D.**), the Company will pay all reasonable and necessary legal fees and legal expenses incurred in

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : **000004 of 000032**

defending a **Disciplinary Proceeding** first received by the **Insured** during the **Policy Period** and reported to the Company pursuant to Section VIII – Claims, A. Claim Reporting Provision; provided:

   **(1)** The **Wrongful Act** giving rise to the **Disciplinary Proceedings** happens during the **Policy Period** or on or after the **Retroactive Date**; and

   **(2)** Prior to the effective date of this policy, no **Insured** had any knowledge of such **Disciplinary Proceeding** or any fact, circumstance, situation or incident which would lead a reasonable person in that **Insured's** position to conclude that a **Disciplinary Proceeding** was likely.

   **b.** The total of such payment will not exceed $50,000 for all **Disciplinary Proceedings** first received during the **Policy Period** or the Extended Reporting Period, if applicable.

   **c.** No payment shall be made for any taxes; criminal or civil fines, penalties or sanctions; registration or licensing fees; or any monetary judgment, award or settlement of any kind.

   Payments for **Disciplinary Proceedings** will be in addition to the Limits of Liability shown in the Declarations, and such payments shall not be subject to the Deductible.

2. **Loss Of Earnings And Expense Reimbursement**

   **a.** Upon submission to the Company of satisfactory written proof of payment by the **Insured**, the Company shall reimburse the **Insured** for all reasonable and necessary expenses incurred by the **Insured** at the Company's written request for attendance at any arbitration, **Mediation**, deposition, hearing or trial in connection with a **Claim** to which this policy applies.

   **b.** The Company shall compensate the Named Insured for loss of earnings solely of an **Insured** who is a lawyer a maximum of $500 per day per insured lawyer to attend at the Company's request any arbitration, **Mediation**, deposition, hearing or trial in connection with a **Claim** to which this policy applies.

   **c.** The maximum the Company shall reimburse all **Insureds** for all loss of earnings and expense reimbursements for all **Claims** to which this policy applies and all attendances at the Company's written request is $25,000.

   **d.** All **Breach Mitigation Expenses** arising out of a single **Unintentional Data Compromise** or a series of related **Unintentional Data Compromises**, will be treated as a single **Unintentional Data Compromise**.

   Reimbursement to the **Insured** shall be in addition to the Limits of Liability stated in the Declarations, and such payments will not be subject to the Deductible.

## SECTION III – DEFINITIONS

**A.** **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these; provided, however, **Bodily Injury** does not include humiliation or the infliction of emotional distress arising solely from **Personal Injury**.

**B.** **Breach Mitigation Expenses** means expenses incurred for:

   1. The services of a public relations professional, or other publicity expenses that are recommended by a public relations professional to respond to any actual adverse publicity in the media, that is the result of an **Unauthorized Access**;

   2. Expenses, including but not limited to, notification and related legal fees that are incurred to comply with a **Security Breach Notice Law** and that are the result of an **Unauthorized Access**; and

   3. Expenses associated with voluntarily providing credit monitoring services to individuals affected by an **Unauthorized Access**.

**C.** **Claim** means the **Insured's** receipt of either:

   1. A written demand for **Damages**; or

   2. The service of suit or institution of arbitration proceedings against the **Insured**.

**D.** **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the **Insured** with the prior written consent of the Company, in the defense of that portion of any **Claim** for which coverage is afforded under this policy, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000005 of 000032

NOT ORIGINAL DOCUMENT
01/15/2021 11:08:06 AM
84997-7

without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that **Claims Expenses** shall not include:

1. Salary, wages, overhead, or benefit expenses of or associated with employees or officials of the Named Insured or employees or officials of the Company; or

2. Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive outside counsel for the Named Insured or the Company.

E. **Damages** means the monetary portion of any judgment, award or settlement; provided, however, **Damages** shall not include:

1. Punitive or exemplary damages or any multiplied portions of damages in excess of actual damages, including trebling of damages, except where insurable by law;

2. The cost of any modifications or changes to the **Insured's** security measures, procedures, software or hardware required or agreed to by the **Insured** to satisfy a judgment, award or settlement;

3. Taxes, criminal or civil fines assessed against an **Insured**, or attorneys' fees of a party other than an **Insured** or other penalties imposed by law;

4 Sanctions;

5. Matters which are uninsurable under the law pursuant to which this policy will be construed; or

6. The return, withdrawal, reduction, restitution or payment of any fees, profits or charges for services or consideration for any expenses paid to the **Insured** for services or goods.

F. **Disciplinary Proceeding** means the **Insured's** receipt of any complaint, charge or investigation commenced or action brought by a bar association, disciplinary board or other similar entity alleging violations of the rules of professional responsibility, or any other action to limit, suspend or revoke the **Insured's** license to practice law.

G. **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common connection or nexus, any fact, circumstance, situation, event, cause, transaction or series of facts, circumstances, situations, events, causes or transactions.

H. **Mediation** means the voluntary process in which an objective third party who is a qualified professional mediator selected by the parties to the **Claim**, with written agreement of the Company, intervenes between the parties in an attempt to achieve settlement of the **Claim**. **Mediation** does not include litigation, arbitration or any court mandated proceedings.

I. **Of Counsel** means any lawyer, professional corporation, limited liability professional corporation or any lawyer who is an employee of such professional corporation or limited liability professional corporation who is specifically identified on the application for this policy as Of Counsel solely while acting on behalf of the Named Insured.

J. **Personal Injury** means:

1. Libel, slander or defamation;

2. Invasion or infringement of the right of privacy; or

3. Malicious prosecution, abuse of process, false arrest or false imprisonment;

committed in the performance of **Professional Legal Services.**

K. **Policy Period** means the period from the inception date of this policy to the policy expiration date as stated in the Declarations, or its earlier cancellation or termination date.

L. **Predecessor Firm** means any legal entity which was engaged in the practice of law to whose financial assets and liabilities the Named Insured is the majority successor in interest and which is designated in the application as a Predecessor Firm.

M. **Professional Legal Services** means services rendered by an **Insured**:

1. As a lawyer, notary public, mediator, arbitrator, title insurance agent, or as an administrator, conservator, executor, guardian, trustee other than a trustee in bankruptcy, or any other similar fiduciary, provided that such services are connected with and incidental to the **Insured's** profession as a lawyer, including services performed in a pro bono capacity, and are performed by or on behalf of the Named Insured or any **Predecessor Firm**; or

**MELA 0001 04 17**

**Page 3 of 11**

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000006 of 000032

2.  As a director or officer of any bar association, its governing body or any of its committees, provided that such services were rendered while such **Insured** was a partner, officer, director, principal, shareholder, shareholder of a partner, member or employee of the Named Insured.

**N. Retroactive Date** means the Retroactive Date stated in the Declarations as applicable to this coverage.

**O. Temporary Or Leased Professional** means any lawyer, including an independent contractor, who is specifically identified on the application for this policy as a Temporary Or Leased Professional solely while acting on behalf of the Named Insured.

**P. Unauthorized Access** means:

1.  A breach of the Named Insured's security measures, systems or procedures, or any intentional violation, interception, or use or misuse of the Named Insured's **Electronic Communications System**, whether or not for profit or gain, by any person, without the permission, knowledge or ratification of the **Insured**;

2.  Access to the Named Insured's **Electronic Communications System** that is with the **Insured's** permission where such permission is the result of fraud or deception;

3.  Use of the Named Insured's **Electronic Communications System** by a party authorized by the **Insured** to use such system, who does so for an unauthorized purpose;

4.  The introduction of programs into the Named Insured's **Electronic Communications System** which contain fraudulent or destructive instructions or code; and

5.  The threat to initiate or activate programs which contain fraudulent or destructive instructions or code into the Named Insured's **Electronic Communications System** for the purpose of extorting money or other valuable consideration from the **Insured**.

**Q. Unintentional Data Compromise** means any computer security incident, intrusion, breach, compromise, theft, loss or misuse of the **Private Data** of the Named Insured.

**R. Wrongful Act** means any act, error or omission by the **Insured** in rendering or failing to render **Professional Legal Services** for others, and includes **Interrelated Wrongful Acts.**

### SECTION IV – EXCLUSIONS

This policy does not apply to any **Claim**:

A.  Based upon, arising out of, or in any way involving any:

1.  Contract or agreement for, or any other right relating to, payment of or division of any fees or fee apportionment between the **Insured** and any lawyer;

2.  Obligation of the **Insured** under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

3.  Wrongful termination or other employment related practices;

4.  Actual or alleged **Bodily Injury**, or damage to or destruction of any tangible property including loss of use thereof;

5.  The **Insured's** services or capacity as a securities broker, dealer, financial planner, investment advisor, accountant, real estate broker or real estate agent;

6.  Unlawful discrimination by any **Insured**;

7.  Notarized certification or acknowledgement by any **Insured**, in their capacity as a notary public, of a signature without the physical appearance at the time of said notarization before such notary public, or the person who is or claims to be the person signing such instrument;

8.  The **Insured's** capacity as a public official, or as an employee of a governmental body, subdivision or agency; provided, however, this exclusion does not apply to the rendering of **Professional Legal Services** by an **Insured** to a governmental body, subdivision or agency wherein the Named Insured receives a fee for such **Professional Legal Services**;

9.  Actual or alleged violations of the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments or any regulation or order issued pursuant thereto or any similar federal, state or local law;

**MELA 0001 04 17**                                                         **Page 4 of 11**

**10.** Deliberately criminal, dishonest or fraudulent act, error or omission if a judgement or other final adjudication adverse to the **Insured** establishes that the **Insured** committed a criminal, dishonest or fraudulent act, error or omission; provided, however, any criminal, dishonest or fraudulent act, error or omission pertaining to any **Insured** under this policy will not be imputed to any other **Insured** under this policy for the purpose determining the applicability of this exclusion;

**11.** Actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: antitrust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships; or

**12.** Any **Unauthorized Access** or **Unintentional Data Compromise**;

**B.** Made against the **Insured** by or on behalf of any **Insured** under this policy; provided, however, this exclusion does not apply to a **Claim** arising out of the rendering of **Professional Legal Services** by an **Insured** rendered to such other **Insured** as a client;

**C.** Brought by or on behalf of any entity, of which at the time **Professional Legal Services** were rendered, any **Insured** had more than a 15% ownership interest or control, whether or not such ownership interest or control is financial or otherwise; or

**D.** For conversion, misappropriation or defalcation of funds or property.

## SECTION V – TERRITORY

The insurance afforded by this **policy** applies worldwide, except for any country on which the government of the United States of America has imposed trade sanctions, embargoes or any similar regulations that prohibit the transaction of business with or within such country, provided the **Claim** is first made in the United States of America, its territories, possessions, Puerto Rico or Canada.

## SECTION VI – LIMITS OF LIABILITY, DEDUCTIBLES, MULTIPLE CLAIMS AND RELATED CLAIMS

### A. Limits Of Liability

#### 1. Each Claim

The liability of the Company for the combined total of **Damages** and **Claim Expenses** for each **Claim** first made against the **Insured** during the **Policy Period** or Extended Reporting Period, if applicable, shall not exceed the Each Claim Limit of Liability stated in the Declarations. This limit applies as excess over the Deductible amount.

#### 2. Policy Aggregate

Subject to Paragraph **1.**, the total liability of the Company for the combined total of all **Damages** and **Claim Expenses** arising out of all **Claims** first made against the **Insured** during the **Policy Period** and the Extended Reporting Period, if applicable, shall not exceed the Policy Aggregate Limit of Liability stated in the Declarations. This limit applies as excess over the Deductible amount.

### B. Deductibles

#### 1. Each Claim Deductible

The Each Claim Deductible amount stated in the Declarations will be paid by the Named Insured and will be applicable to each **Claim** and will apply to **Damages** and **Claim Expenses**, whether or not any **Damages** payments are made.

Such Deductible amounts shall be paid by the Named Insured within 10 days of receipt of written demand by the Company. The determination of the Company as to the reasonableness of the **Claim Expenses** will be conclusive.

#### 2. Aggregate Deductible

Subject to Paragraph **1.**, the total Deductible payments to be paid by the Named Insured will not exceed the Deductible stated in the Declarations for **Damages** and **Claim Expenses** arising out of all **Claims**, other than any **Supplementary Payments**, first made during the **Policy Period** and the Extended Reporting Period, if applicable.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000008 of 000032

**MELA 0001 04 17**                                                    **Page 5 of 11**

### 3. Deductible Credits

If a **Claim** is settled without litigation, arbitration, **Mediation** or court mandated proceedings, the Deductible for such **Claim** will be reduced by 75% or $25,000, whichever is less. If the Named Insured and the Company agree to **Mediation** and such **Claim** is settled at **Mediation**, the Deductible for such **Claim** will be reduced by 50% or $20,000, whichever is less.

### C. Multiple Insureds, Claims And Claimants

The inclusion herein of more than one **Insured** in any **Claim** or the making of **Claims** by more than one person or organization will not operate to increase the Limits of Liability stated in the Declarations. More than one **Claim** arising out of a single **Wrongful Act** or **Personal Injury** or a series of related **Wrongful Acts** or **Personal Injuries** will be considered a single **Claim**. All such **Claims**, whenever made, will be treated as a single **Claim**. Such single **Claim** will be deemed first made on the date on which the earliest **Claim** arising out of such **Wrongful Act, Personal Injury** or **Interrelated Wrongful Act** is made or with respect to written notice given to and accepted by the Company pursuant to Section VIII – Claims, A. Claim Reporting Provision on the date within the **Policy Period** on which such notice of potential **Claim** is first received by the Company.

## SECTION VII – DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

### A. Defense, Investigation And Settlement Of Claims

1. The Company will have the right and duty to defend and investigate any **Claim** to which coverage under this policy applies pursuant to the following provisions:

   a. **Claim Expenses** incurred in defending and investigating such **Claim** shall be a part of and not in addition to the Limits of Liability stated in the Declarations. Such **Claim Expenses** will reduce the Limits of Liability and will be applied against the Deductible. The Company will have no obligation to pay any **Damages** or to defend or continue to defend any **Claim** or to pay **Claim Expenses** after the Limits of Liability as stated in the Declarations have been tendered to the **Insured** or into the court or exhausted by payment(s) of **Damages** or **Claim Expenses**.

   b. The Company will select defense counsel; provided, however, that if the law of the state of the **Insured's** domicile (as stated in the Declarations) allows the **Insured** to control the selection of defense counsel where a conflict of interest has arisen between the **Insured** and the Company, the Company will provide a list of attorneys or law firms from which the **Insured** may designate defense counsel who will act solely in the interest of the **Insured**, and the **Insured** will direct such defense counsel to cooperate with the Company. Such cooperation shall include:

      (1) Providing on a regular basis, but not less frequently than every 3 months, written reports on claimed **Damages**, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the **Claim**;

      (2) Providing any other reasonable information requested and a fully itemized billing on a periodic basis; and

      (3) Cooperating with the Company and the **Insured** in resolving any disputes, including but not limited to billing disputes.

      The fees and costs incurred by such defense counsel as set forth above, including those fees and costs generated by cooperation with the Company will be included in **Claim Expenses**. Such **Claim Expenses** will be a part of and will not be in addition to the Limits of Liability as stated in the Declarations. Such **Claim Expenses** will reduce the Limits of Liability and will be applied against the Deductible.

### B. Consent To Settlements

1. The Company will not settle any **Claim** without the prior written consent of the **Insured**, but the Company will have, at all times, the right to recommend any settlement of any **Claim**. If the **Insured** refuses to settle such **Claim** pursuant to the Company's recommendations, then the Company's liability in regard to such **Claim** will not exceed the amount for which the **Claim** could have been settled and the amount of any **Claim Expenses** incurred up to the date of the **Insured's** refusal to settle the **Claim**. Such amounts are subject to the provisions of Paragraphs A. and B. of Section VI – Limits Of Liability, Deductibles, Multiple Claims and Related Claims.

2. The **Insured** will not, with respect to any **Claim** covered under this policy, except at his or her own cost, make any payment, admit any liability, settle any **Claims**, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur **Claim Expenses** without the Company's prior written

**MELA 0001 04 17**                                                                                     **Page 6 of 11**

consent, such consent not to be unreasonably withheld. Any costs and expenses incurred by the **Insured** prior to the **Insured** giving written notice of the **Claim** to the Company will be borne by the **Insured** and will not constitute satisfaction of the Deductible.

## SECTION VIII – CLAIMS

### A. Claim Reporting Provision

1. The **Insured** shall give to the Company written notice as soon as practicable of any **Claim** first made against the **Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, but in no event later than:

   a. 60 days after expiration of the **Policy Period**; or

   b. The expiration of the Extended Reporting Period, if applicable.

   Such **Claim** must be reported to the address stated in the Company Reporting Policyholder Notice attached to this policy.

2. Subject to Paragraph **1.**, in the event suit is brought or arbitration is instituted against the **Insured**, the **Insured** will immediately forward to the address stated in the Company Reporting Policyholder Notice attached to this policy, every demand, notice, summons or other process received by the **Insured** or by the **Insured's** representatives.

### B. Discovery Clause

If during the **Policy Period**, the **Insured** first becomes aware of a specific **Wrongful Act** or **Personal Injury** which is reasonably expected to result in a **Claim** within the scope of coverage of this policy, then the **Insured** may provide written notice to the Company containing the information listed below. If such written notice is received by the Company during the **Policy Period**, then any **Claim** subsequently made against the **Insured** arising out of such **Wrongful Act** or **Personal Injury** will be deemed for the purpose of this insurance to have been first made on the date on which such written notice is first received by the Company. 

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice shall be given to the Company containing the following information:

1. The description of the specific **Wrongful Act** or **Personal Injury**;

2. The date on which such **Wrongful Act** or **Personal Injury** took place;

3. The injury or damage which has or may result from such **Wrongful Act** or **Personal Injury**;

4. The identity of any persons or organization subject to such injury or damage; and

5. The circumstances by which the **Insured** first became aware of such **Wrongful Act** or **Personal Injury**.

### C. Assistance And Cooperation Of The Insured

The **Insured** will cooperate with the Company and upon the Company's request, the **Insured** will:

1. Submit to examination and interview by a representative of the Company, under oath if required;

2. Attend hearings, depositions and trials;

3. Assist in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses in the conduct of suits; and

4. Give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating or defending any **Claim**, all without cost to the Company other than expense reimbursement provided under Section II – Insuring Agreement, **B.** Supplementary Payments.

The **Insured** will further cooperate with the Company and do whatever is necessary to secure and affect any right of indemnity, contribution or apportionment which the **Insured** may have.

### D. False Or Fraudulent Claims

If any **Insured** commits fraud in proffering any **Claim**, this insurance shall become void from the date such fraudulent **Claim** is proffered.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000010 of 000032

## SECTION IX – EXTENDED REPORTING PERIOD

A. If the Named Insured or Company nonrenews this policy or cancels this policy pursuant to Section **XI** – Other Conditions, A. Cancellation for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured will have the right upon payment of an additional premium, calculated at the percentage stated below of the annual premium for the **Policy Period**, to extend the coverage granted under this policy, to **Claims** made against the **Insureds** during the months stated below:

1. 100% for 12 months;

2. 150% for 24 months;

3. 200% for 36 months; or

4. 300% for 60 months;

as elected by the Named Insured, and reported to the Company pursuant to Section **VIII** – Claims, A. Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any **Wrongful Act** or **Personal Injury** committed on or after the **Retroactive Date** and prior to the effective date of such cancellation or nonrenewal. This period of months as elected by the Named Insured and described in this paragraph will be referred to in this policy as the Extended Reporting Period.

If, however, this policy is immediately succeeded by similar claims made insurance coverage on which the **Retroactive Date** is the same as or earlier than that stated in the Declarations, the succeeding insurance will be deemed to be a renewal hereof and, in consequence, the Named Insured will have no right to purchase an Extended Reporting Period.

The quotation of a different premium, Deductible or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

B. As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:

1. All Deductibles when due;

2. All premiums due for the **Policy Period**; and

3. All premium and deductibles due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement.

The right to purchase the Extended Reporting Period will terminate unless a written request for the Extended Reporting Period is received by the Company within 30 days after the effective date of cancellation or nonrenewal together with full payment for the Extended Reporting Period. If such written request and premium payment for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

C. In the event of the purchase of the Extended Reporting Period, the entire premium therefor will be fully earned at its commencement.

D. The Extended Reporting Period will not in any way increase the Limits of Liability as stated in the Declarations.

## SECTION X – NON-PRACTICING EXTENDED REPORTING PERIOD OPTIONS

A. Any natural person who is a partner, officer, director, principal, shareholder, shareholder of a partner, member or employee of the Named Insured who, during the **Policy Period**, retires or otherwise ceases, except by suicide, the private practice of their profession as a lawyer will have the right upon payment of an additional premium of:

1. 150% of the annual premium for the **Policy Period** divided by the total number of lawyers stated in the application for this policy for 12 months; or

2. 200% of the annual premium for the **Policy Period** divided by the total number of lawyers stated in the application for this policy for 24 months;

to extend coverage granted under this policy, to **Claims** first made against such **Insured**, during 12 or 24 months as elected by the **Insured**, and reported to the Company pursuant to Section **VIII** – Claims, A. Claim Reporting Provision, following immediately upon the effective date of such retirement or cessation of private practice, for any **Wrongful Act** or **Personal Injury** committed on or after the **Retroactive Date** and prior to the effective date of such retirement or cessation of private practice. This period of months as elected by the **Insured** and described in this paragraph will be referred to in this policy as the Non-Practicing Extended Reporting Period.

**MELA 0001 04 17**                                                                                    **Page 8 of 11**

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000011 of 000032

This Non-Practicing Extended Reporting Period Option will not be available when the license to practice law of the **Insured** exercising the Non-Practicing Reporting Period Option has been revoked, suspended or surrendered at the request of any disciplinary or regulatory authority for any reason other than the retirement or cessation of private practice of such **Insured** at, on or prior to the effective date of retirement or cessation of private practice.

**B.** As a condition precedent to the right to elect the Non-Practicing Extended Reporting Period, the Named Insured must have paid:

   **1.** All Deductibles when due;

   **2.** All premiums due for the **Policy Period;** and

   **3.** All premium and deductibles due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement.

   The right to elect the Non-Practicing Extended Reporting Period will terminate unless a written request for the Non-Practicing Extended Reporting Period is received by the Company within 60 days after the effective date of retirement or cessation of private practice together with full payment for the Non-Practicing Extended Reporting Period. If such written request and fully earned premium payment for the Non-Practicing Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Non-Practicing Extended Reporting Period at a later date.

**C.** In the event of the purchase of the Non-Practicing Extended Reporting Period, the entire premium therefor will be fully earned at its commencement.

**D.** The Non-Practicing Extended Reporting Period will not in any way increase the Limits of Liability stated in the Declarations.

## SECTION XI – OTHER CONDITIONS

### A. Cancellation

   **1.** This policy may be cancelled by the Named Insured on behalf of all **Insureds** by mailing to the Company written notice stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the earned premium will be computed at the customary short rate. Payment or tender of unearned premium will not be a condition precedent to the effectiveness of cancellation, but such payment will be made as soon as practicable.

   **2.** This policy may be cancelled by the Company by mailing to the Named Insured, at the address stated in the Declarations, written notice stating when, not less than 30 days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Named Insured has failed to pay a premium or Deductible when due, including premium and deductibles due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement, this policy may be cancelled by the Company by mailing a written notice of cancellation to the Named Insured stating when, not less than 10 days thereafter, such cancellation will be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice will become the end of the **Policy Period.** Such notice will be conclusive on all **Insureds.** Delivery of such written notice by the Named Insured or the Company will be equivalent to mailing. If cancelled by the Company, earned premium will be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

### B. Changes In The Named Insured

If after the inception date of this policy:

   **1.** There is a change of 50% or more in the total number of lawyers at the Named Insured; or

   **2.** There is any new involvement in any single practice specialty anticipated to produce 25% or more of the Named Insured's gross billable dollars;

the Named Insured shall give written notice of such change to the Company as soon as practicable, but in no event later than 60 days after such change, and the Company will have the right to additional premium for such changes, based on its sole assessment of the additional exposure(s) presented.

There will not be any premium adjustment during the **Policy Period** as the result of a change in the total number of lawyers at the Named Insured other than as stated herein above.

**MELA 0001 04 17**

**Page 9 of 11**

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)        EXH : 000012 of 000032

### C. Changes In Ownership

If after the inception date of this policy:

**1.** Another entity, person or group of entities or persons acting in concert acquires a majority of the voting securities of the Named Insured or majority successor in interest of the Named Insured;

**2.** The Named Insured is merged into or consolidated with another entity such that the Named Insured is not the surviving entity; or

**3.** A receiver, liquidator, conservator, trustee or similar official is appointed with respect to the Named Insured;

then, the policy will remain in effect until the end of the **Policy Period,** but only with respect to any **Wrongful Act** or **Personal Injury** which occurred before such change in ownership. The Named Insured shall give written notice of such change in ownership to the Company as soon as practicable, but in no event later than 60 days after such change in ownership. Further, in consideration of the coverage extended, the entire premium for this policy will be considered fully earned upon the occurrence of any of the above events.

### D. Representations

By acceptance of this policy, the **Insureds** agree that the information and statements contained in the application(s) are:

**1.** The basis of this policy and are to be considered as incorporated into and constituting a part of this policy;

**2.** Their representations; and

**3.** Deemed material to the acceptance of the risk or hazard assumed by the Company under this policy; and

that this policy is issued in reliance upon the truth and accuracy of such representations.

### E. Entire Agreement

This policy, the Declarations, the application(s) and any written endorsements attached hereto will be deemed to be a single, unitary contract.

### F. Other Insurance

This insurance is excess of the Deductible stated in the Declarations and any other insurance available to the **Insured** whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

### G. Changes

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company will not affect a waiver or a change in any part of this policy and will not estop the Company from asserting any right under the terms of the policy. The terms of this policy will not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the **Insureds** and the Company or any of its agents relating to this insurance.

### H. Assignment Of Interest

Assignment of interest under this policy will not bind the Company unless its consent is endorsed hereon.

### I. Subrogation

**1.** In the event of any payment under this policy, the Company will be subrogated to the right of recovery of all **Insureds** to the extent of such payment. The **Insured** will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing after the **Claim** to prejudice such rights.

**2.** Any amount so recovered will be apportioned as follows:

Any recovery will first be used for the repayment of expenses incurred toward subrogation; second, to any loss and expense payment by the **Insured** in excess of any Deductible(s); third, to any loss and expense payments by an excess carrier on behalf of the **Insured**; fourth, to any loss and expense payments by any primary carrier on behalf of the **Insured**; and, last, to repayment of the **Insured's** Deductible.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000013 of 000032

**J. Action Against The Company**

1. No action will lie against the Company unless, as a condition precedent thereto, the **Insured** will have fully complied with all of the terms and conditions of this policy, nor until the amount of the **Insured's** obligation to pay will have been fully and finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Company.

2. Nothing contained in this policy will give any person or organization any right to join the Company as a co-defendant in any action against the **Insured** to determine the **Insured's** liability. Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve the Company of any of its obligations hereunder.

**K. Authorization**

By acceptance of this policy, all **Insureds** agree that the Named Insured as stated in the Declarations will act on behalf of all **Insureds** with respect to the:

1. Giving and receiving of all notices to and from the Company as provided herein;

2. Exercising of the Extended Reporting Period;

3. Cancellation of this policy in whole or part;

4. Payment of premiums and Deductibles when due; and

5. Receiving of any return premiums that may become due under this policy.

**L. Spousal And Domestic Partner Coverage**

If a **Claim** made against an **Insured** individual includes a **Claim** against that **Insured** individual's lawful spouse solely by reason of:

1. Such spouse's status as the **Insured** individual's spouse; and

2. Such spouse's ownership interest in property from which the claimant seeks recovery for the **Insured** individual's **Wrongful Acts;**

all loss which such spouse becomes legally obligated to pay on account of such **Claim** will be treated for purposes of this policy as loss which the **Insured** individual is legally obligated to pay on account of the **Claim** made against the **Insured** individual. Such loss will be covered under this policy only if and to the extent that such loss would be covered under this policy if incurred by the **Insured** individual. The coverage extension afforded by this Paragraph **L.** does not apply to any **Claim** alleging any **Wrongful Act** by the **Insured** individual's spouse. The term spouse as used in this section includes any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law in the United States of America.

**M. Liberalization**

If the Company adopts any revision to this policy wording that would broaden the coverage under this policy form at any time during the **Policy Period**, the broadened coverage will immediately apply to this policy, without any effect on the terms and conditions, including but not limited to the Limits of Liability.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000014 of 000032

**MELA 0001 04 17**                                    **Page 11 of 11**

INTERLINE



# EVANSTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT

All Coverage Parts included in this policy are subject to the following:

Except with respect to any policy issued in any state in which the Insurer is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions remain unchanged.

**MEIL 1200 01 10**                                                                 Page 1 of 1

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : **000015 of 000032**

**MARKEL**®

# EVANSTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

It is agreed that:

1. This policy does not apply:

   A. Under any Liability Coverage, to bodily injury or property damage

      (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

   C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

      (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

      (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

      (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000016 of 000032

MEIL 5409 09 10

Page 1 of 2

2.   As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

   (a)   any nuclear reactor,

   (b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

   (d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

All other terms and conditions remain unchanged.

**MEIL 5409 09 10**                                                                                    **Page 2 of 2**

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000017 of 000032

**PROFESSIONAL LIABILITY**
POLICY NUMBER: LA810338



**MARKEL®**

## EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## 25% MINIMUM EARNED PREMIUM

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY INSURANCE

In consideration of the premium paid, it is hereby understood and agreed that the following is added to Paragraph **A.** Cancellation of Section **XI** – Other Conditions:

In the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of 25% of the total premium.

All other terms and conditions remain unchanged.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : **000018 of 000032**

NOT ORIGINAL DOCUMENT
01/15/2021 11:08:06 AM
84997-7

**PROFESSIONAL LIABILITY**
POLICY NUMBER: LA810338





# EVANSTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF INSURED – TITLE AGENCY

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY INSURANCE

### SCHEDULE

| Title Agency: | GS Closing, LLC |
|---|---|

In consideration of the premium paid, it is hereby understood and agreed that the **LAWYERS PROFESSIONAL LIABILITY INSURANCE** Coverage Form is amended as follows:

**A.** The following is added to Section **I** - The Insured:

The Title Agency shown in the Schedule of this endorsement.

**B.** Solely as pertains to the coverage provided by this endorsement, the following is added to Paragraph **L.** Professional Legal Services of Section **III** - Definitions:

**Professional Legal Services** includes acting as a title abstracter/searcher, title insurance agent, or an escrow agent pursuant to written escrow instructions accepted in writing by the Title Agency shown in the Schedule of this endorsement or title closing agent, notary public or real estate settlement agent.

**C.** The following are added to Paragraph **A.** of Section **IV** – Exclusions:

This policy does not apply to any **Claim**:

**A.** Based upon, arising out of, or in any way involving any:

1. The insolvency, receivership, bankruptcy, liquidation or financial inability to pay of any bank, savings and loan, banking firm, financial institution, lender, mortgage company, registered representative or broker/dealer of securities or commodities, insurance company, reinsurer, risk retention group or captive (or any other self-insurance plan or trust by whatsoever name), contractor, property developer, real estate company, or any other individual, organization or other party;

2. Conversion, misappropriation, commingling, defalcation, theft, disappearance, or insufficiency in the amount of escrow funds, funds, monies, monetary proceeds, property, or any other assets, securities, negotiable instruments or any other thing of value. This exclusion applies irrespective of which individual, party, or organization actually or allegedly committed or caused in whole or part the conversion, misappropriation, commingling, defalcation, theft, disappearance, or insufficiency;

3. Disbursement of construction funds or any escrow open for a period of over 6 months;

4. Transaction involving a loan funded in whole or in part with the **Insured's** own funds or the funds of any organization controlled by, owned by, or commonly owned or affiliated with the **Insured**; or any servicing of loans by the **Insured**; or

5. Violation of Real Estate Settlement Procedures Act (RESPA) or any similar state or local legislation.

All other terms and conditions remain unchanged.

**MELA 2203 04 17**

Page 1 of 1

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000019 of 000032

PROFESSIONAL LIABILITY
POLICY NUMBER: LA810338



**MARKEL**®

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPLIT RETROACTIVE DATE

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY INSURANCE

### SCHEDULE

| Limits Of Liability | Deductible | | Retroactive Date |
|---|---|---|---|
| $2,000,000  Each Claim | $50,000 | Each Claim | July 1, 2013 |
| $2,000,000  Aggregate | $50,000 | Aggregate | |

In consideration of the premium paid, it is hereby understood and agreed that the **LAWYERS PROFESSIONAL LIABILITY INSURANCE** Coverage Form is amended as follows:

**A.** The following is added to Section **III** – Definitions for the purposes of this endorsement:

**Alternate Retroactive Date** means the date shown in the Schedule of this endorsement.

**B.** Paragraph **A.** of Section **VI** – Limits Of Liability, Deductibles, Multiple Claims And Related Claims are replaced with the following:

#### A. Limits Of Liability

The Limits Of Liability shown in the Schedule of this endorsement are subject to the Alternate Retroactive Date shown in the Schedule; however, the Limits Of Liability stated in the Declarations remain subject to the Retroactive Date stated in the Declarations.

**1. Each Claim**

The liability of the Company for the combined total of **Damages** and **Claim Expenses** for each **Claim** first made against the **Insured** during the **Policy Period** or Extended Reporting Period, if applicable, shall not exceed the Each Claim Limit of Liability shown in the Schedule of this endorsement. This limit applies as excess over the Deductible amount.

**2. Policy Aggregate**

Subject to Paragraph **1.**, the total liability of the Company for the combined total of all **Damages** and **Claim Expenses** arising out of all **Claims** first made against the **Insured** during the **Policy Period** and the Extended Reporting Period, if applicable, shall not exceed the Aggregate Limit of Liability stated in the Schedule of this endorsement. This limit applies as excess over the Deductible amount.

**C.** Paragraphs **B.1.** and **B.2.** of Section **VI** – Limits Of Liability, Deductibles, Multiple Claims And Related Claims are replaced with the following:

#### B. Deductibles

**1. Each Claim Deductible**

The Each Claim Deductible amount stated in the Schedule of this endorsement will be paid by the Named Insured and will be applicable to each **Claim** and will apply to **Damages** and **Claim Expenses**, whether or not any **Damages** payments are made.

**MELA 2205 02 19**                                                                                               Page 1 of 2

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000020 of 000032

NOT ORIGINAL DOCUMENT
01/15/2021 11:08:06 AM
84997-7

Such Deductible amounts shall be paid by the Named Insured within 10 days of receipt of written demand by the Company. The determination of the Company as to the reasonableness of the **Claim Expenses** will be conclusive.

**2. Aggregate Deductible**

Subject to Paragraph 1., the total Deductible payments to be paid by the Named Insured will not exceed the Deductible stated in the Schedule of this endorsement for **Damages** and **Claim Expenses** arising out of all **Claims**, other than any **Supplementary Payments**, first made during the **Policy Period** and the Extended Reporting Period, if applicable.

All other terms and conditions remain unchanged.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000021 of 000032

**MELA 2205 02 19**

**Page 2 of 2**

NOT ORIGINAL DOCUMENT
01/15/2021 11:08:06 AM
84997-7

PROFESSIONAL LIABILITY



**MARKEL®**

## EVANSTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF DEFINITION OF DAMAGES

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY INSURANCE

In consideration of the premium paid, it is hereby understood and agreed that Paragraph **D.** of Section **III** – Definitions is replaced with the following:

**D.** **Damages** means the monetary portion of any judgment, award or settlement, and includes punitive or exemplary damages or any multiplied portions of damages in excess of actual damages, including trebling of damages, to the extent such damages are insurable by law; provided, however, **Damages** will not include:

1. The cost of any modifications or changes to the **Insured's** security measures, procedures, software or hardware required or agreed to by the **Insured** to satisfy a judgment, award or settlement;

2. Taxes, criminal or civil fines assessed against an **Insured**, or attorneys' fees of a party other than an **Insured** or other penalties imposed by law;

3. Sanctions;

4. Matters which are uninsurable under the law pursuant to which this policy will be construed; or

5. The return, withdrawal, reduction, restitution or payment of any fees, profits or charges for services or consideration for any expenses paid to the **Insured** for services or goods.

All other terms and conditions remain unchanged.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : **000022 of 000032**

MELA 2207 04 17

NOT ORIGINAL DOCUMENT
01/15/2021 11:08:06 AM
84997-7

**PROFESSIONAL LIABILITY**
POLICY NUMBER: LA810338



**MARKEL®**

# EVANSTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHOICE OF COUNSEL

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY INSURANCE

### SCHEDULE

| Partner: | $175 per hour |
|----------|---------------|
| Associate: | $165 per hour |
| Paralegal: | $75 per hour |

In consideration of the premium paid, it is hereby understood and agreed that Paragraph **A.1.b.** of Section **VII** – Defense, Settlements And Claim Expenses is replaced by the following:

### A. Defense, Investigation And Settlement Of Claims

1. The Company will have the right and duty to defend and investigate any **Claim** to which coverage under this policy applies pursuant to the following provisions:

   b. The Company agrees to appoint a defense counsel selected by the Named Insured and approved in advance in writing by the Company, at the Named Insured's request, to act as defense counsel. The Company agrees to appoint such defense counsel, to defend the **Insured** subject to that defense counsel's compliance with the Company's current Claim Litigation Management Guidelines and cooperation with the Company. The **Insured** understands and agrees that the Company maintains the right to appoint such defense counsel, and that the **Insured** will not, except at the **Insured's** sole expense, appoint any defense counsel without the prior written consent of the Company. The attorneys from such defense counsel, assigned to any **Claim** must be admitted to the practice of law in the state in which the **Claim** is brought. All **Claim Expenses** are subject to hourly rate caps for the Partner, Associate and Paralegal levels as shown in the Schedule of this endorsement. The Named Insured will be responsible for all **Claim Expenses** in excess of the above referenced rate caps, and such **Claim Expenses** in excess of the above referenced rate caps will not be applied toward the applicable Deductible. The rates referenced above will apply within the applicable Deductible and will apply through conclusion of the **Claim**.

   The Company will not be responsible for any payment to such defense counsel of any hourly fee above those agreed to by such defense counsel pursuant to the attorney retainer agreement and the Company's Claim Litigation Management Guidelines.

   Subject to Section **VI** – Limits Of Liability, Deductibles, Multiple Claims And Related Claims, the Company's obligation to pay **Damages** and **Claim Expenses** will not begin until the applicable Deductible shown in the Declarations has been satisfied by the **Insured**.

   The **Insured** will direct such defense counsel to cooperate with the Company. Such cooperation will include:

   (1) Reporting pursuant to the Company's current Claim Litigation Management Guidelines;

   (2) Providing any other reasonable information requested and fully itemized billing on a periodic basis; and

**MELA 2210 04 17**            Page 1 of 2

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)     EXH : 000023 of 000032

**(3)** Cooperating with the Company and the **Insured** in resolving any discrepancies.

The fees and costs incurred by such defense counsel as set forth above, including those fees and costs generated by cooperation with the Company will be included in **Claim Expenses**. Such **Claim Expenses** will be a part of and will not be in addition to the Limits of Liability as shown in the Declarations. Such **Claim Expenses** will reduce the Limits of Liability and will be applied against the Deductible.

All other terms and conditions remain unchanged.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000024 of 000032

**MELA 2210 04 17**

**Page 2 of 2**

NOT ORIGINAL DOCUMENT
01/15/2021 11:08:06 AM
84997-7

**PROFESSIONAL LIABILITY**
POLICY NUMBER: LA810338


**MARKEL®**

# EVANSTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SUBPOENA ASSISTANCE

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY INSURANCE

### SCHEDULE

| | |
|---|---|
| Subpoena Limit: | $15,000 |

In consideration of the premium paid, it is hereby understood and agreed that the following is added to Paragraph **B.** Supplementary Payments of Section **II – Insuring Agreement:**

**Subpoena Assistance**

In the event that during the **Policy Period**, the **Insured** first receives a subpoena for **Insured's** documents or testimony related to the performance of **Professional Legal Services** which is not reasonably expected to result in a **Claim** against the **Insured**, the **Insured** will provide a copy of the subpoena or document request, if legal advice in response to the subpoena is requested. If requested, the Company may retain legal counsel to advise the **Insured** regarding document production, or to represent the **Insured** in giving sworn testimony. Legal fees and legal expenses incurred in providing advice as to production of documents, review of testimony and representation on the date of deposition will be at the Company's cost. In no event will notice of a **Claim** be eligible for coverage under this provision. The total of any payments for legal fees and legal expenses incurred will not exceed the Subpoena Limit shown in the Schedule of this endorsement for all subpoena(s) first received during the **Policy Period.**

All other terms and conditions remain unchanged.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : **000025 of 000032**

PROFESSIONAL LIABILITY
POLICY NUMBER: LA810338



**MARKEL®**

# EVANSTON INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CRISIS MANAGEMENT EXPENSES

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY INSURANCE

### SCHEDULE

| Limit: | $25,000 |
|--------|---------|

In consideration of the premium paid, it is hereby understood and agreed that the **LAWYERS PROFESSIONAL LIABILITY INSURANCE** Coverage Form is amended as follows:

**A.** The following is added to Paragraph **B.** Supplementary Payments of Section **II** – Insuring Agreement:

**Crisis Management Expenses**

**a.** Upon submission to the Company of satisfactory written proof of payment by the Named Insured, the Company will reimburse the Named Insured up to the Limit shown in the Schedule of this endorsement for **Crisis Management Expenses** incurred by the Named Insured as a direct result of any **Claim** covered under this policy.

**b.** Such Limit will be part of and not in addition to the Limit Of Liability shown on the Declarations, and such payments will be subject to the Deductible.

**B.** With respect to coverage provided by this endorsement, the following is added to Section **III** – Definitions:

**Crisis Management Expenses** means the reasonable and necessary costs of retaining, for a stipulated period of time and with the prior approval of the Company, an independent public relations consultant and the cost of associated advertising and public relations media and activities.

All other terms and conditions remain unchanged.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : **000026 of 000032**

PROFESSIONAL LIABILITY



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – OFFICE SHARING

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY INSURANCE

In consideration of the premium paid, it is hereby understood and agreed that the following is added to Paragraph **A.** of Section **IV** – Exclusions:

This policy does not apply to any **Claim**:

**A.** Based upon, arising out of, or in any way involving any:

Lawyer sharing common or adjacent office facilities, offices, office space or staff that is not a partner, associate, **Of Counsel**, or a **Temporary Or Leased Professional**, for the Named Insured.

All other terms and conditions remain unchanged.

MELA 2301 04 17

Page 1 of 1

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : **000027 of 000032**

NOT ORIGINAL DOCUMENT
01/15/2021 11:08:06 AM
84997-7

**PROFESSIONAL LIABILITY**



# EVANSTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION – SPECIFIED INCIDENT, CLAIM OR SUIT

This endorsement modifies insurance provided under the following:

LAWYERS PROFESSIONAL LIABILITY INSURANCE

In consideration of the premium paid, it is hereby understood and agreed that the following is added to Paragraph **A.** of Section **IV** – Exclusions:

This policy does not apply to any **Claim:**

**A.** Based upon, arising out of, or in any way involving any:

**Wrongful Act** or **Personal Injury**, or any fact, circumstance, situation, incident, **Claim** or suit referred to in an answer to any question of the application(s) or addendum(a) attached to this policy or, if this policy is a renewal or replacement of any policy issued by the Company or any of its affiliated companies, the application(s) or addendum(a) attached to the initial policy.

All other terms and conditions remain unchanged.

<div align="right">
Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)
</div>

<div align="right">
EXH : **000028 of 000032**
</div>

NOT ORIGINAL DOCUMENT
01/15/2021 11:08:06 AM
84997-7



☐ Markel American Insurance Company
☐ Markel Insurance Company
☐ Evanston Insurance Company

**MARKEL®**

## DESIGNED PROTECTION<sup>SM</sup> FOR LAW FIRMS
## RENEWAL APPLICATION FOR LAWYERS PROFESSIONAL LIABILITY INSURANCE

THE POLICY FOR WHICH APPLICATION IS MADE APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. CLAIM EXPENSES WILL REDUCE THE LIMITS OF LIABILITY AND WILL APPLY AGAINST THE DEDUCTIBLE. PLEASE READ THE POLICY CAREFULLY.

If space is insufficient to answer any question fully, attach a separate sheet.

**General Information**

1. (a) Full name of Insured: Goldberg Simpson, LLC and GS closing LLC

   (b) Principal business address: 9301 Dayflower St. Prospect, KY 40059

   (c) Change (if any) in secondary practice locations: 607 North Shore Drive, Suite 102 Jeffersonville, IN 47130

2. Has there been any change in the management and / or equity structure of the Named Insured firm in the last 12 months?     ☑ Yes ☐ No

   If Yes, provide details: Death of Mitchell A. Charney

3. Have there been any changes in the name of the Named Insured firm or any organizational changes in the last 12 months, or are any changes being contemplated?     ☑ Yes ☐ No

   If Yes, provide details: Open Indiana Office through merging KEY LAW GROUP into Goldberg Simpson LLC

---

**Financial And Staffing Information**          $7,544,230          $7,600,000

1. Provide the gross revenue for the last 12 months: $_____ for the upcoming 12 months: $_____

2. Provide the number(s) of Lawyers and Staff who were hired or left the firm in the last 12 months.

| | Lawyers | Limited License Legal Technicians | Paralegals | Office Staff | Independent Contractors |
|---|---|---|---|---|---|
| Hired / Left | 3 / 5 | ___ / ___ | 2 / 2 | 1 / 2 | ___ / 1 |

3. In the last 12 months, has any lawyer served as a director, officer, trustee or partner of any entity that is or was a client at the time of service, or has any lawyer ceased to serve in such a capacity?     ☐ Yes ☑ No

   If Yes, complete an updated Supplement for Outside Interests.

4. In the last 12 months, has any lawyer held an equity or financial interest in a client, or has any lawyer ceased to hold such an interest in a client?     ☐ Yes ☑ No

   If Yes, complete an updated Supplement for Outside Interests.

5. Is any lawyer proposed for this coverage:

   (a) An employee of any organization, entity or governmental body other than the Applicant?     ☐ Yes ☑ No

   If Yes, provide details. _____

   (b) Engaged in any professional / business activities other than the private practice of law?     ☑ Yes ☐ No

   If Yes, provide details (incl. revenue). Mediator/Arbitrator

MALA 1009 09 17                                                        Page 1 of 4

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000029 of 000032

**Practice Areas**

1. **Has the insured provided professional legal services in a new area of practice in the last 12 months?**  ☐ Yes ☑ No
   If Yes, provide details (area of practice and % of revenue):

2. **Does the insured expect a change of 10% or more in any area of practice in the upcoming year?**  ☐ Yes ☑ No
   If Yes, provide details (area of practice and % change):

**Business Practices**

1. **Have any of the insured's past or present corporate clients became insolvent, bankrupt, or went into liquidation or receivership during the last 12 months?**  ☐ Yes ☑ No
   If Yes, answer the following for each such client:

| Client Name | Client Address | Publicly Traded? (Y / N) | Legal Services Performed |
|---|---|---|---|
| | | | |
| | | | |

2. (a) **Have any suits for collection of fees have been filed against any client in the last 12 months?**  ☑ Yes ☐ No
   If Yes, provide the following for each suit for unpaid legal fees. Attach a separate sheet if necessary.

| Date Filed | Name of Client | $ Amount Sought | Status/Result |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

   (b) Provide updated status on any other unresolved suits for fees:

3. **Does the insured outsource any work, either domestically or out of the country?**  ☐ Yes ☑ No
   If Yes, provide the percentage of billings, client(s), supervising lawyer, describe services provided and advise the location where such outsourced services originate:

4. **Does the insured accept client securities or other forms of compensation in lieu of fees?**  ☐ Yes ☑ No
   If Yes, provide details.

5. **Does the insured share office space with any other law practice?**  ☐ Yes ☑ No
   If Yes, provide details.

6. **Within the past year, has the applicant's security been evaluated by a Qualified Security Assessor?**  ☐ N/A ☐ Yes ☑ No
   If yes, has the applicant corrected or complied with all critical recommendations?  ☐ Yes ☐ No
   If the applicant has not corrected or complied with all critical recommendations, please provide the timeline for compliance with these recommendations.

   If no, please describe any steps taken to ensure compliance with Payment Card Industry Data Security Standard.

**MALA 1009 09 17**                                                                 **Page 2 of 4**

**Claim History**

1. Is any person(s) or entity(ies) proposed for this insurance under investigation, or has any disciplinary complaint or grievance been made to any court, bar association, administrative agency or regulatory body with respect to their professional legal services?    ☐ Yes ☑ No

   If Yes, provide details on a separate sheet.

2. Is (are) any person(s) or entity(ies) proposed for this insurance aware of any fact, error, omission, circumstance or situation that might provide grounds for any claim under the proposed insurance?    ☐ Yes ☑ No

   If Yes, for each, complete a copy of our Supplemental Claim Form, form LA-31000.

3. For any claim that was open last year and that was submitted to any previous insurance carrier other than Markel or its affiliates, please provide updated information, including current claim status, and updates of amounts paid and current reserves (on a separate sheet).

**Fraud Warnings**

**Notice to Alabama, Arkansas, District of Columbia, Louisiana, Maryland, New Mexico, Rhode Island and West Virginia applicants:** Any person who knowingly (or willfully)* presents a false or fraudulent claim for payment of a loss or benefit or knowingly (or willfully)* presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. *Applies in Maryland only.

**Notice to Colorado applicants:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Notice to Florida and Oklahoma applicants:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony (of the third degree)*. *Applies in Florida only.

**Notice to Kansas applicants:** Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

**Notice to Kentucky, New York, Ohio and Pennsylvania applicants:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties (not to exceed five thousand dollars and the stated value of the claim for each such violation)*. *Applies in New York only.

**Notice to Maine, Tennessee, Virginia and Washington applicants:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties (may)* include imprisonment, fines and denial of insurance benefits. *Applies in Maine only.

**Notice to Minnesota applicants:** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**Notice to New Jersey applicants:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**Notice to Oregon applicants:** Any person who knowingly and with intent to defraud or solicit another to defraud the insurer by submitting an application containing a false statement as to any material fact may be violating state law.

**Notice to Vermont applicants:** Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

**MALA 1009 09 17**    **Page 3 of 4**

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000031 of 000032

NOT ORIGINAL DOCUMENT
01/15/2021 11:08:06 AM
84997-7

FOR THE PURPOSE OF THIS APPLICATION, THE UNDERSIGNED AUTHORIZED AGENT OF THE PERSON(S) AND ENTITY(IES) PROPOSED FOR THIS INSURANCE DECLARES THAT TO THE BEST OF THEIR KNOWLEDGE AND BELIEF, AFTER REASONABLE INQUIRY, THE STATEMENTS IN THIS APPLICATION AND IN ANY ATTACHMENTS, ARE TRUE AND COMPLETE. THE COMPANY AND AFFILIATES THEREOF ARE AUTHORIZED TO MAKE ANY INQUIRY IN CONNECTION WITH THIS APPLICATION. SIGNING THIS APPLICATION DOES NOT BIND THE COMPANY TO PROVIDE OR THE APPLICANT TO PURCHASE THE INSURANCE.

THIS APPLICATION, INFORMATION SUBMITTED WITH THIS APPLICATION AND ALL PREVIOUS APPLICATIONS AND MATERIAL CHANGES THERETO ARE CONSIDERED PHYSICALLY ATTACHED TO AND PART OF THE POLICY IF ISSUED. THE COMPANY WILL HAVE RELIED UPON THIS APPLICATION AND ALL SUCH ATTACHMENTS IN ISSUING THE POLICY.

IF THE INFORMATION IN THIS APPLICATION AND ANY ATTACHMENT MATERIALLY CHANGES BETWEEN THE DATE THIS APPLICATION IS SIGNED AND THE EFFECTIVE DATE OF THE POLICY, THE APPLICANT WILL PROMPTLY NOTIFY THE COMPANY, WHO MAY MODIFY OR WITHDRAW ANY OUTSTANDING QUOTATION OR AGREEMENT TO BIND COVERAGE.

THE UNDERSIGNED DECLARES THAT THE PERSON(S) AND ENTITY(IES) PROPOSED FOR THIS INSURANCE UNDERSTAND THAT:

(I) THE POLICY FOR WHICH THIS APPLICATION IS MADE APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD;

(II) UNLESS AMENDED BY ENDORSEMENT, THE LIMITS OF LIABILITY CONTAINED IN THE POLICY WILL BE REDUCED, AND MAY BE COMPLETELY EXHAUSTED BY CLAIM EXPENSES AND, IN SUCH EVENT, THE COMPANY WILL NOT BE LIABLE FOR CLAIM EXPENSES OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT TO THE EXTENT THAT SUCH COSTS EXCEED THE LIMITS OF LIABILITY IN THE POLICY; AND

(III) UNLESS AMENDED BY ENDORSEMENT, CLAIM EXPENSES WILL BE APPLIED AGAINST THE DEDUCTIBLE.

## WARRANTY

The undersigned warrant to the Company that they understand and accept the notice stated above and that the information contained herein is true and will be the basis of the policy and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy. The undersigned authorize the release of claim information from any prior insurer to the Company or affiliates thereof.

This application is signed by undersigned authorized agent of the applicant(s) on behalf of the applicant(s) and its, owners, partners, directors, officers and employees.

This application must be signed by the owner, principal, partner, executive officer or equivalent within 60 days of the proposed effective date.

Goldberg Simpson LLC

Name of applicant

Signature of applicant   Jonathan D. Goldberg

(Florida only) Agent license number: _____

Managing Member

Title

06/27/2019

Date

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000032 of 000032

## Chuck Cassis

| | |
|---|---|
| **From:** | Steve Smith |
| **Sent:** | Thursday, January 10, 2019 4:41 PM |
| **To:** | Blanner, Joseph; temalfarb@esb-law.com; howard@esb-law.com |
| **Cc:** | Kaupp, Boris |
| **Subject:** | RE: Synergy Plumbing - Origin Constructors |

Joe, I do not know the benefit of going over the lien issues again, as you do below, other than restating the obvious. Your draft responses are very well done. I will review further tomorrow and provide some thoughts and potential inclusions. You did not advise of your due date for filing the answer to counterclaims, so please advise as soon as possible.

The larger question is what damages have they asserted as a result of the defective lien. Merely a cloud on the title has not been proven to carry damages in Kentucky that I am aware of. I haven't researched that lately as that is a common claim in every lien case, valid lien or not.

I note in your complaint that you did include a breach of contract and unjust enrichment claim. Those are most critical anyway. They will survive whether or not the lien claim survives, and that is the underlying basis for the non-payment.

To the extent that I need to advise my carrier of any action, I am not aware of why that is necessary at this time. A few hours legal time for the preparation of response documents on the counterclaims, I can understand. However, until there has been some proof of damages from the bank or from the owner, who in fact claim it is a defective lien, then I am not sure what I need tell my carrier. If you are insinuating that Emalfarb, Swan and Bain, or Goldberg Simpson shares risk in the failing of your client to prove it is entitled to damages under the breach of contract claim, then I simply do not follow. The question has always been whether Synergy has a provable claim for unpaid contract balances under his agreement with Origin Constructors. That is the issue that needs some answers.

As I said above, I will be providing comments on the draft responses on Friday.

Thanks,

*Stephen E. Smith, Esquire*
*Goldberg Simpson, LLC*

----

**From:** Blanner, Joseph <jblanner@mlklaw.com>
**Sent:** Thursday, January 10, 2019 3:23 PM
**To:** Steve Smith <ssmith@goldbergsimpson.com>; temalfarb@esb-law.com; howard@esb-law.com
**Cc:** Kaupp, Boris <bkaupp@mlklaw.com>
**Subject:** Synergy Plumbing - Origin Constructors

Dear Mr. Smith, Mr. Emalfarb and Mr. Bain,

Please find enclosed the following , which pertains to the mechanic's lien filings you made on behalf of your former client Synergy Plumbing, LLC. ("Synergy") in Kentucky State Court:

- Synergy's Complaint, which includes a Count for enforcement of the restated and refiled lien;

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000001 of 000003

1

- The Counterclaim of Origin Constructors, LLC. ("Origin") and Brookside Kentucky, LLC. ("Brookside");
- The Counterclaim of Commerce Bank;
- Our draft Reply to the above listed counterclaims.

As you will notice, both Origin/Brookside and Commerce Bank assert claims against Synergy arising from defects in the original lien filing (failure to correctly describe the property subject to the lien, failure to provide the statutory notice of intent to file lien to Brookside as the owner of the property), as well as from defects pertaining to the re-stated and re-filed lien (release of the original lien and failure to timely file the lien).

We have tried to include reasonable arguments for the validity of the liens into our draft replies, including actual or constructive notice to Brookside via the pre-lien notice that was provided to Origin, and the inefficiency of the lien release due to absence of consideration. To the extent you have any suggested input, factual or otherwise, to further support our argument regarding the validity of the liens, or our arguments contra the counterclaims, please provide them to us no later than by the end of business next Tuesday, January 15.

As I pointed out in my prior communications with you, there are serious problems with the liens and related filings prepared by your firm, because:

- The original lien did not include the legal description for the correct parcel of land that was to be subject to the lien;
- The original lien listed Origin, not Brookside as the record owner, as owner of the property to be subject to the lien;
- The pre-lien notice went to Origin, not Brookside as the record owner;
- You filed a release of lien stating the lien had "been satisfied in full," even though Synergy had informed you in writing that the amounts stated in the lien remained outstanding;
- Due to the defects in the original lien filing, coupled with the unwarranted release thereof, and the passage of time involved, it is highly questionable whether the re-filed and re-stated lien can stand.

The pending counterclaims are based precisely upon these issues. Given the exposure which Synergy faces as a result of the pending counterclaims, coupled with the prospect of not being able to enforce the pending lien, Synergy is looking to your firm, as the party responsible for any mistakes in the lien and the filing procedures, to make it whole with regard to its lien claim, and to defend it and hold it harmless with regard to the counterclaim filed by Origin/Brookside and Commerce Bank. Synergy is also looking to you to pay the additional attorney's fees incurred by it as a result of the foregoing.  To the extent you have not done so

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000002 of 000003

NOT ORIGINAL DOCUMENT
01/15/2021 11:08:36 AM

already, we ask you to notify your firm's professional liability insurer of this matter and confirm this to us.

We are looking forward to receiving your comments to the draft Replies and to our response to our request above. Thank you.

Sincerely,



**Joseph C. Blanner, Esq.** | jblanner@mlklaw.com
**McCarthy, Leonard & Kaemmerer, L.C.**
825 Maryville Center Drive, Ste. 300
Town & Country, Missouri 63017-5946
Phone: 314.392.5200 | Facsimile: 314.392.5221 | Cell: 636.248.4527
www.linkedin.com/in/josephblanner/ | www.mlklaw.com

CONFIDENTIALITY -- This e-mail and any attachments are confidential and are also privileged under the attorney-client privilege if sent to or from a client to an attorney and work-product doctrine if sent in anticipation of litigation. If you are not the named recipient, please notify the sender immediately, destroy the e-mail and its contents and do not disclose the contents to another person, use it for any purpose, or store or copy the information in any medium. It is unlawful (18 U.S.C. § 2510) for you to keep this e-mail if it is not intended for you. I am communicating to you via e-mail because you have consented to receive communications via this medium.

Any U.S. federal tax advice contained in this communication (including any attachments or enclosures) was not intended or written by the author to be used, and cannot be used, for the purpose of (1) avoiding penalties that may be imposed on a taxpayer or (2) promoting, marketing, or recommending to another party any transaction or other matter addressed herein.

NOT ORIGINAL DOCUMENT
01/15/2021 11:09:03 AM
84997-7

# McCarthy
# Leonard &
# Kaemmerer
## Attorneys at Law

Joseph C. Blanner
Jblanner@mlklaw.com

May 29, 2020

**Via Certified Return Receipt Mail**          **Via Certified Return Receipt Mail**
Stephen E. Smith                              Hal Emalfarb
Goldberg Simpson, LLC                         Emalfarb, Swan & Bain
9301 Dayflower Street                         440 Central Ave.
Prospect, KY 40059                            Highland Park, IL 60035

Re: Synergy Plumbing, LLC

Messrs. Smith and Emalfarb:

As you will recall, my firm represents Synergy Plumbing, LLC ("Synergy") in its dispute against Origin Constructors, LLC, et. al. As you know, your firm filed multiple liens for multiple parties related to an Origin Constructions, LLC's ("Origin") project in Bowling Green, Kentucky. In particular, you filed a lien against a property location at 1265 and 1257 Kentucky Street, Bowling Green, Kentucky 42101, first on behalf of a company called MMI (on September 5, 2017) and then on behalf of my client (on December 5, 2017).

The property information utilized for the initial liens was incorrect. Thus, the liens were filed against the wrong property and identified the wrong owner. In particular, you utilized information provided by MMI or others when you filed the initial MMI lien on September 5, 2017. My client informed you prior to or at the time of filing its lien that the address appeared to be incorrect on the lien that you prepared. Nonetheless, you filed the lien against the property located at 1265 and 1257 Kentucky Street.

At some point in time you corrected the MMI lien by noting the correct property address. You did not correct Synergy's lien nor did you apprise Synergy of this error. Nor did you even apprise Synergy that you corrected the MMI lien.

Regardless, at some point MMI settled with Origin. Consequently, you prepared and released MMI's lien on or about August 23, 2018. On this same date, you prepared and released Synergy's lien. All of these actions were taken without any consultation with Synergy.

Thus, as of August 23, 2018, Synergy had no knowledge that a lien had been prepared and filed against the wrong property and that such lien was released. You thereafter proposed refiling the lien against the wrong property and identifying the wrong owner. Instead, a Restated and Refiled

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000001 of 000003

received
6/1/20

825 Maryville Centre Drive Suite 300 | Town and Country (St. Louis) | Missouri 63017-5946
Phone: 314.392.5200 | Fax: 314.392.5221 | www.mlklaw.com

NOT ORIGINAL DOCUMENT
01/15/2021 11:09:03 AM
84997-7

*Page | 2*
*May 29, 2020*

Statement of Lien was filed on September 6, 2018, against the correct property at 1266 Kentucky Street, Bowling Green, Kentucky 42101.

As feared, the dismissal of the lien caused a cascade of actions to Synergy's detriment. By failing to correct the initial lien in any manner, much less a statutory timely manner, the dismissal acted as a subsequent bar for future liens. Your actions caused Synergy to defend itself in a lawsuit seeking declaratory judgment, a charge of filing of an illegal lien, and slander of title. Our firm specifically warned you that this would happen after we learned of the circumstances surrounding the improper liens.

Due to the improper actions taken by your firm, my client was forced to settle its lawsuit against Origin for an amount far less than what the case was actually worth. Now that the underlying cause of action has concluded, much to the detriment of Synergy, Synergy hereby demands the sum of $586,227.39. This amount not only reflects what the underlying case was worth but had to forgo due to seeking and obtaining a release for actions caused by your firm, but also attorney's fees and costs associated with defending Synergy against the Counterclaim.

I trust that your carrier has already been placed on notice of this issue, but if not, please forward a copy of this letter to it.

Very truly yours,
McCARTHY, LEONARD & KAEMMERER, L.C.

Joseph C. Blanner

NOT ORIGINAL DOCUMENT
01/15/2021 11:09:03 AM
84997-7



ST. LOUIS
MO 630
29 MAY '20
PM 7 L

UNITED STATES POSTAGE
PITNEY BOWES
$ 006.90⁰
02 1P
0003208036    MAY 29 2020
MAILED FROM ZIP CODE 63017



McCARTHY
LEONARD &
KAEMMERER
ATTORNEYS AT LAW

825 MARYVILLE CENTRE DRIVE | SUITE 300 | TOWN AND COUNTRY | MISSOURI 63017-5946

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**

7019 2280 0001 7008 8759

Stephen E. Smith
Goldberg Simpson, LLC
9301 Dayflower Street
Prospect, KY 40059

40059-980399

**Debbie Duncan**

| | |
|---|---|
| **From:** | Chuck Cassis <chuck@goldbergsimpson.com> |
| **Sent:** | Wednesday, July 29, 2020 4:45 PM |
| **To:** | Austin Mehr |
| **Subject:** | FW: Synergy Plumbing v. Goldberg Simpson (LA402201) - 2 of 4 |

Her (the carrier's) response...

**From:** Forté Wells, LaKeisha <Lakeisha.ForteWells@Markel.com>
**Sent:** Tuesday, July 28, 2020 5:49 PM
**To:** Chuck Cassis <chuck@goldbergsimpson.com>
**Cc:** Mark S. Fenzel <MFenzel@MiddletonLaw.com>
**Subject:** RE: Synergy Plumbing v. Goldberg Simpson (LA402201)

Chuck,

I have reviewed the materials you provided including the email exchange between Steve and Joe on January 10, 2019. In that email, Joe sets forth, in great detail, the alleged mistakes with the lien and the lien release. He then states that Synergy "is looking to your firm, as the party responsible for any mistakes in the lien and the filing procedures, to make it whole with regard to its lien claim, and to defend it and hold it harmless with regard to any counterclaim filed by Origin/Brookside and Commerce Bank. Synergy is also looking to you to pay the additional attorney's fees incurred by it as a result of the foregoing." Your policy effective July 1, 2018 – July 1, 2019, which was in effect when you received the January 10, 2019 email, defines Claim as, among other things, "the **Insured's** receipt of . . . [a] written demand for **Damages**." Damages is defined, in relevant part, as "the monetary portion of any judgment, award, or settlement." The policy does not require the demand to contain the exact dollar amount of the Damages demanded. Therefore, Synergy's demand that the firm "make it whole with regard to its lien claim . . . defend it and hold it harmless with regard to any counterclaim filed by Origin/Brookside and Commerce Bank . . . [and] pay the additional attorney's fees incurred by it as a result of the foregoing" constitutes a written demand for Damages. As such, the Claim was first made during the 2018-2019 policy period and, for the insuring agreement to be triggered, should have been reported within 60 days after the expiration of the Policy Period, which was August 30, 2019 (Section II A.). Because the Claim was not reported by August 30, 2019, the reporting requirement of the Insuring Agreement was not satisfied and there is no coverage for the Claim. The notice-prejudice rule does not apply to claims made policies such as this.

Please let me know if you have any questions.

Keisha

**LaKeisha Forté Wells, Esq.**
**Senior Claims Examiner**
Markel®
Plano, Texas
Toll-Free:  (800) 362-7535, extension 253470
Direct: (469) 241-3470
www.markel.com

Please report all new losses to newclaims@markel.com and send all other Claims correspondence to markelclaims@markel.com. Services provided through Markel Service, Incorporated/Markel West, Inc. (California) for Markel-affiliated insurance companies. Please review our privacy policy at www.markel.com/privacy-policy.

1

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000001 of 000004

**From:** Chuck Cassis [mailto:chuck@goldbergsimpson.com]
**Sent:** Thursday, July 23, 2020 3:13 PM
**To:** Forté Wells, LaKeisha <Lakeisha.ForteWells@Markel.com>
**Cc:** Mark S. Fenzel <MFenzel@MiddletonLaw.com>
**Subject:** Synergy Plumbing v. Goldberg Simpson (LA402201)

LaKeisha,

Attached is the exchange . At that point, there was no formal claim against Steve or GS, no monetary demand to Steve or GS, and no proof of damages resulting from the lien case. As such, Steve did not see any reason to notify anyone, as the underlying case was still ongoing. As detailed in paragraph 4 of Steve's email, there were preliminary issues to be determined before any clam arose from Steve (or Emalfarb's) representation. As we discussed, we notified Markel immediately upon receiving notice of a formal claim (and a formal monetary demand). There has been no lawsuit filed, no judgment rendered, and no prejudice to the carrier or its ability to properly investigate the claim.

-Chuck

---

**From:** Forté Wells, LaKeisha <Lakeisha.ForteWells@Markel.com>
**Sent:** Thursday, July 23, 2020 3:55 PM
**To:** Chuck Cassis <chuck@goldbergsimpson.com>
**Cc:** Mark S. Fenzel <MFenzel@MiddletonLaw.com>
**Subject:** FW: Synergy Plumbing v. Goldberg Simpson

Chuck,

Can you please email me a copy of the 1/10/19 correspondence from Synergy's counsel that was discussed on our call?

Thanks,

Keisha

**LaKeisha Forté Wells, Esq.**
**Senior Claims Examiner**

Markel®
Plano, Texas
Toll-Free: (800) 362-7535, extension 253470
Direct: (469) 241-3470
www.markel.com

Please report all new losses to newclaims@markel.com and send all other Claims correspondence to markelclaims@markel.com. Services provided through Markel Service, Incorporated/Markel West, Inc. (California) for Markel-affiliated insurance companies. Please review our privacy policy at www.markel.com/privacy-policy.

---

**From:** Mark S. Fenzel [mailto:MFenzel@MiddletonLaw.com]
**Sent:** Thursday, July 23, 2020 1:54 PM
**To:** Forté Wells, LaKeisha <Lakeisha.ForteWells@Markel.com>; Marie E. Field <MField@MiddletonLaw.com>
**Cc:** Dawn L. Wilkerson <DWilkerson@MiddletonLaw.com>
**Subject:** RE: Synergy Plumbing v. Goldberg Simpson

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000002 of 000004

Keisha, if its not in the sharefle, I don't have it.  Do you want to ask Chuck for it?

---

**From:** Forté Wells, LaKeisha <Lakeisha.ForteWells@Markel.com>
**Sent:** Thursday, July 23, 2020 2:51 PM
**To:** Mark S. Fenzel <MFenzel@MiddletonLaw.com>; Marie E. Field <MField@MiddletonLaw.com>
**Cc:** Dawn L. Wilkerson <DWilkerson@MiddletonLaw.com>
**Subject:** RE: Synergy Plumbing v. Goldberg Simpson

Mark,

I have reviewed the documents in the Sharefile folder.  However, I did not see the 1/10/19 correspondence from Synergy's counsel that was discussed on our call. Can you have that document uploaded as well or just email it to me if that's easier?

Thanks,

Keisha

**LaKeisha Forté Wells, Esq.**
**Senior Claims Examiner**

Markel®
Plano, Texas
Toll-Free:  (800) 362-7535, extension 253470
Direct: (469) 241-3470
www.markel.com

Please report all new losses to newclaims@markel.com and send all other Claims correspondence to markelclaims@markel.com.  Services provided through Markel Service, Incorporated/Markel West, Inc. (California) for Markel-affiliated insurance companies.  Please review our privacy policy at www.markel.com/privacy-policy.

---

**From:** Mark S. Fenzel [mailto:MFenzel@MiddletonLaw.com]
**Sent:** Friday, July 17, 2020 3:24 PM
**To:** Marie E. Field <MField@MiddletonLaw.com>
**Cc:** Forté Wells, LaKeisha <Lakeisha.ForteWells@Markel.com>; Dawn L. Wilkerson <DWilkerson@MiddletonLaw.com>
**Subject:** Re: Synergy Plumbing v. Goldberg Simpson

Lakeisha if u cannot open we will email to u in small bytes.  Have a good weekend. Mark

Sent from my iPhone

> On Jul 17, 2020, at 4:21 PM, Marie E. Field <MField@middletonlaw.com> wrote:
>
> Ms. Fortewells,
>
> Attached is a ShareFile containing documents regarding Synergy Plumbing v. Goldberg Simpson. If you have any trouble opening the file let me know.  Have a good weekend.
>
> Marie Field

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000003 of 000004

Citrix Attachments                    Expires January 13, 2021

SYNERGY PLUMBING V. GOLDBERG SIMPOSON          27.5 MB

Download Attachments

Marie Field uses Citrix Files to share documents securely.

&lt;image001.png&gt;

**Marie E. Field**
**Certified Kentucky Paralegal**
*Direct: 502.625.2744 Fax: 502.588.1954*
*401 South Fourth Street, Suite 2600, Louisville, KY 40202*
*mfield@middletonlaw.com*

&lt;image002.png&gt;

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender and delete the message.

&lt;Attachments.html&gt;

This message has been scanned for malware by Websense. www.websense.com

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000004 of 000004

NOT ORIGINAL DOCUMENT
01/06/2021 04:51:48 PM
84997-7

Date Produced: 12/28/2020

ConnectSuite Inc.:

The following is the delivery information for Certified Mail™/RRE/RD item number 9236 0901 9403 8327 8096 36. Our records indicate that this item was delivered on 12/21/2020 at 07:26 a.m. in FRANKFORT, KY 40601. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:        C2425981.13898470

**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 12/28/2020

ConnectSuite Inc.:

The following is the delivery information for Certified Mail™/RRE/RD item number 9236 0901 9403 8327 8096 81. Our records indicate that this item was delivered on 12/21/2020 at 08:07 a.m. in FRANKFORT, KY 40601. The scanned image of the recipient information is provided below.

Signature of Recipient :

| Signature X | Amy Warlord |
| Printed Name | |

Address of Recipient :

| Delivery Address | |

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

AOS : 000001 of 000001

Customer Reference Number:     C2425981.13898469