UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| GOLDBERG SIMPSON, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 3:21-cv-00002-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| EVANSTON INSURANCE COMPANY, | ) | **&** |
| *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

When an attorney at Goldberg Simpson, LLC, was accused of committing legal malpractice, the firm contacted their insurance provider, Evanston Insurance Company. But upon review, Evanston denied coverage. Now, through cross-Motions for Summary Judgment, both parties ask the Court to declare whether Evanston must indemnify and defend Goldberg. [R. 20; R. 21.] Upon review, the Court declines to grant summary judgment in favor of either party.

## I

In December 2017, Attorney Steve Smith of Goldberg Simpson, LLC, prepared and filed a mechanic's lien on behalf of Synergy Plumbing, LLC. [R. 20 at 2.] In July 2018, Goldberg entered into a one-year claims-made professional liability insurance policy with Evanston Insurance Company. *Id.* at 4. In January 2019, Mr. Smith received an email from Synergy "which identified several 'serious problems'" with his preparation of its mechanic's lien. [*See* R. 20-1.] Moreover, in its email, Synergy informed Mr. Smith that it was "looking to [his] firm, as the party responsible for any mistakes in the lien and the filing procedures, to make it whole

[…],” and that it was “looking to [Goldberg] to pay the additional attorney's fees incurred […].” *Id.* Additionally, Synergy asked Goldberg to “notify [its] firm's professional liability insurer of this matter […].” *Id.* In response, Mr. Smith responded that, while he could understand Synergy's request for Goldberg to help resolve outstanding issues with the lien, he was not sure why Evanston would need to be informed. *See id.* But, also in response to Synergy's email, Mr. Smith shared a document with his fellow partners partially titled “Potential Malpractice Claim,” in which he “detailed the factual background of the liens” Goldberg had prepared. [*See* R. 20-2.] Despite Synergy's request, however, Goldberg did not report its communications with Synergy to Evanston. [R. 20 at 3.] Later, in July 2019, upon the expiration of its first claims-made policy, Goldberg entered into a second year-long professional liability insurance policy with Evanston. [R. 21-1 at 1.]

    In May 2020, over sixteen months after receiving Synergy's email, and while under its 2019 – 2020 policy with Evanston, Mr. Smith received a certified letter from Synergy which indicated that it was forced to “settle its lien claims” and demanded $586,227.39 from Goldberg. [*See* R. 20-3.] In response to the letter, Goldberg notified Evanston, for the first time, of its dispute with Synergy. [*See* R. 15 at 3.] But upon review, Evanston denied overage to Goldberg because it concluded that Synergy's claim was made under Goldberg's expired 2018 – 2019 coverage policy and because Goldberg had knowledge of Synergy's claim before it entered into the 2019 – 2020 policy. [R. 20 at 4.] Now, both Evanston and Goldberg move for summary judgment, request declaratory relief, and ask the Court to determine whether Evanston must indemnify and defend Goldberg against Synergy's demand. [R. 20; R. 21.]

**II**

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

**A**

As an initial matter, because parties request declaratory judgment, the Court must

determine whether granting a declaration is appropriate.  Under the Declaratory Judgment Act,

"[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon

the filing of an appropriate pleading, *may* declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be sought."

28 U.S.C. § 2201(a) (emphasis added).  Accordingly, jurisdiction under the act is discretionary.

*See Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942) (exercise of jurisdiction under

the Declaratory Judgment Act is not mandatory); *see also Bituminous Cas. Corp. v. J & L

Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004).  Moreover, "district courts possess

discretion in determining whether and when to entertain an action under the

Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional

prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  In determining whether to

exercise its jurisdiction under the Act, a district court in the Sixth Circuit considers the following

five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the
> declaratory action would serve a useful purpose in clarifying the legal relations
> in issue; (3) whether the declaratory remedy is being used merely for the purpose
> of "procedural fencing" or "to provide an arena for a race for res judicata;" (4)
> whether the use of a declaratory action would increase the friction between our
> federal and state courts and improperly encroach on state jurisdiction; and (5)
> whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) (citations omitted).

In this matter, factor one weighs against further analysis because Goldberg has also pled

a second claim alleging bad faith and a violation of the Unfair Claims Settlement Practices Act.

Consequently, declaratory judgment would only settle the controversy if granted in Evanston's

4

favor.  Additionally, factor five weighs against analysis because Kentucky's own declaration of rights statute, KRS 418.040, is a more effective alternative remedy.  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 561 (6th Cir. 2008) ("state courts are best situated to identify and enforce the public policies that form the foundation" underlying insurance contracts).  But, in favor of proceeding, declaratory judgment would serve a useful purpose in clarifying the legal relations at issue, would not improperly encroach on state jurisdiction, and does not appear to have been sought for an improper purpose.  Accordingly, because a balance of the factors weighs in favor of analysis, the Court will proceed forward.

**B**

Having determined the Declaratory Judgment Act satisfied, the Court turns to Parties' arguments in favor of summary judgment.  Both parties first dispute whether Evanston must indemnify Goldberg against Synergy's monetary demand.  [R. 20 at 10-16; R. 21-1 at 8-18.]  [R. 20 at 8-14.]  Under Section II of both the 2018 – 2019 and 2019 – 2020 policies, Evanston guarantees as follows:

> The Company shall pay on behalf of the Insured all sums in excess of the Deductible stated in the Declarations, which the Insured becomes legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or the Extended Reporting Period.  If applicable, and reported to the company pursuant to Section VIII – Claims, A. Claim Report Provision, by reason of:
>
> 1. A Wrongful Act arising out of Professional Legal Services; or
>
> 2. Personal Injury committed by the Insured; provided:
>
>    a. The entirety of the Wrongful Act or Personal Injury happened during the Policy Period or on or after the Retroactive Date;
>
>    and
>
>    b. Prior to the effective date of this policy no Insured had any knowledge of such Wrongful Act or Personal Injury, or any fact, circumstance, situation

5

or incident which would lead to a reasonable person in the Insured's position to conclude that a Claim was likely.

[R. 1-1 at 13.]  Moreover, the Policy defines "Claim" as the "Insured's receipt of either: 1. A written demand for Damages; or 2. The service of suit or institution of arbitration proceedings against the Insured" and "Damages" as "the monetary portion of any judgment, award, or settlement […]."  *Id.* at 14-15.

In opposition to providing indemnification, Evanston argues that Synergy made its claim under the expired 2018 – 2019 insurance policy by sending its January 2019 email to Mr. Smith, not under the 2019 – 2020 policy in effect at the time of Goldberg's reporting. Consequently, under its contract, Evanston argues that the claim was not "first made against the Insured during the Policy Period or Extended Reporting Period" to trigger coverage.  [*See* R. 20 at 11-14.]  In support of its position that Synergy's January 2019 email to Mr. Smith constituted a "Claim," Evanston refers to its contractual definitions of "Claim" and "Damages," and contends that the email "had all the hallmarks of a traditional demand" such as an allegation of wrongdoing, an expectation of compensation, language like "make [Synergy] whole" and "hold harmless," and a request that Goldberg report Synergy's allegations to Evanston.  *See id.* at 12.  Accordingly, Evanston argues that the email constituted an unreported "written demand for Damages" that was made under the expired 2018 – 2019 policy and that it is therefore not bound to indemnify Goldberg under the 2019 – 2020 agreement.  *Id.*

In response, Goldberg argues that no "Claim" was made by Synergy in its 2019 email because Synergy did not request "the monetary portion of any judgment, award, or settlement" as required under the policy's definition of "Claim."  [R. 21-1 at 9-10; R. 23 at 3.]  And, despite Evanston's contention that the email included the "hallmarks of a traditional demand," Goldberg argues that the parties are bound to the terms of the contract which specifically defines what is

6

and is not a "Claim." [*See* R. 21-1 at 9.] Put simply, because the policy requires a "Claim" to include a request for monetary relief from a judgment, award, or settlement, and no judgment, award, or settlement yet existed when Synergy sent its January 2019 email, Goldberg contends no "Claim" was made. [*See* R. 23 at 3-4.] Instead, Goldberg contends that Synergy's "Claim" was first made by the mailing of its letter in May 2020, during the pendency of the 2019 – 2020 policy, because Synergy, for the first time, requested monetary damages caused by its settlement with a related party. *Id.* at 4. In opposition, however, Evanston argues that "[t]he 2020 letter restates the same claim as the 2019 email" and that, per Section VI(C) of the 2019 – 2020 policy, "[m]ore than one Claim arising out of a single Wrongful Act […] will be considered a single Claim" and "[s]uch single Claim will be deemed first made on the date on which the earliest Claim arising out of such Wrongful Act […] is made." [R. 20 at 13; R. 1-1 at 18.]

Upon review, the Court agrees with Goldberg that no "Claim" under the terms of either policy was made until Goldberg received Synergy's letter in May 2020. Under the specific, agreed upon terms of both insurance policies, a "Claim" is defined as the "Insured's receipt of either: 1. A written demand for Damages; or 2. The service of suit or institution of arbitration proceedings against the Insured" and "Damages" is defined as "the monetary portion of any judgment, award, or settlement […]." [R. 1-1 at 14-15.] In this matter, no service of a suit or institution of arbitration proceedings occurred until November 2020, and no written demand for "the monetary portion of any judgment, award, or settlement" occurred until Synergy settled its claim and demanded compensation from Goldberg through its May 2020 letter. Ultimately, Synergy's 2019 email did not include a written demand for the monetary portion of any *judgment, award, or settlement*. [*See* R. 21-3.] Consequently, despite Evanston's efforts to broaden the definitions included in its policies by arguing that the "traditional hallmarks" of a

7

claim were present in Synergy's January 2019 email, "[w]here the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat'l Ins. Cos. V. Heaven Hill Distilleries*, 82 S.W.3d 869, 873 (Ky. 2002) (citing *American Nat'l Bank and Trust Co. v. Hartford Accident and Indemnity Co.*, 442 F.2d 995, 999 (6th Cir. 1971)).

### B

Having determined that Synergy first made its claim against Goldberg during Goldberg's 2019 – 2020 coverage period, the Court turns to Evanston's second argument.  In its second argument, Evanston contends that it is not required to indemnify Goldberg against Synergy's demand because, prior to the parties' entrance into the 2019 – 2020 policy, Goldberg was aware that it had committed a Wrongful Act and/or that a "Claim" was forthcoming but failed to inform Evanston.  In support, Evanston relies on Section II of its policy which indicates that it will cover an Insured if a Claim arises under the policy period provided that:

> Prior to the effective date of this policy no Insured had any knowledge of such Wrongful Act or Personal Injury, or any fact, circumstance, situation or incident which would lead to a reasonable person in the Insured's position to conclude that a Claim was likely.

[R. 1-1 at 2.]  Moreover, in supplement, the policy defines "Wrongful Act" as "any act, error, or omission by the Insured in rendering or failing to render Professional Legal Services for others […]." *Id.* at 16.  Under this provision, Evanston contends that Mr. Smith clearly had knowledge of the "Wrongful Act" because his email indicated that he understood Synergy's issues with his work and indicated his willingness to provide additional work on the liens to correct the issues. [*See* R. 20 at 13.]  Similarly, Evanston argues that even if Mr. Smith was somehow unaware that he had committed a "Wrongful Act" as defined under the policy, "a reasonable person in [Goldberg's] position [would have] conclude[d] that a Claim was likely,"

as evidenced by Mr. Smith's titling of his internal memorandum "Potential Malpractice Claim." *See id.*

Goldberg presents multiple arguments in opposition.  First, it argues that Mr. Smith had no knowledge of his alleged commission of a "Wrongful Act," and that a reasonable person would not have concluded a Claim to be likely.  [R. 21-1 at 10-13.]  In support, Goldberg argues that Mr. Smith's use of the word "potential" in titling his internal memo demonstrates that despite Synergy's allegations, he did not subjectively believe that he had committed a "Wrongful Act," as it alleges to be required under the definitions found in the policy.  *Id.* at 11.  Moreover, Goldberg references Mr. Smith's memorandum and argues that Mr. Smith believed Synergy to be faced with a breach of contract issue only tangentially related to the lien he had worked on. *Id.* at 12.  Finally, Goldberg argues that Synergy's email simply constituted a "client complain[ing] about work," and that, accordingly, neither Mr. Smith nor a reasonable person could have predicated that Synergy would later file suit or make a written demand for the monetary portion of any judgment, award, or settlement.  *Id.*

Alternatively, Goldberg argues that "the prior knowledge condition is ambiguous" when compared to a separate portion of the policy, and that "the reasonable expectations doctrine" requires Evanston to provide coverage.  First, regarding its ambiguity argument, Goldberg references the section of the policies titled "Discovery Clause."  [R. 21-1 at 13-15; R. 1-1 at 19.] Under the Discovery Clause, Evanston guarantees that it will provide coverage, even after a policy term expires, if the Insured provides notice to Evanston upon "first becom[ing] aware of a specific Wrongful Act […] which is reasonably expected to result in a Claim […]."  [R. 1-1 at 19.]  But, Evanston makes clear that the Insured is not required to preliminarily report potential Claims, and instead, that it "may" do so.  *See id.*  Although the purpose of the clause appears

straightforward – to encourage the early reporting of potential malpractice incidents – Goldberg

argues that Evanston's use of the word "may" conflicts with its prior knowledge requirement

because Evanston both gives an Insured the option to report potential malpractice, but then

withholds coverage if they choose not to do so.  [*See* R. 21-1 at 13-15.]  Accordingly, Goldberg

contends that the "prior knowledge requirement" of Section II must be voided for ambiguity.  *Id.*

at 14 (citing *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223,

226-27 (Ky. 1994) (when "a repugnancy between two clauses" is present, "the contract shall be

resolved to afford maximum coverage.")).

    In further support, Goldberg contends that the "reasonable expectations doctrine"

requires Evanston to provide coverage.  Under the reasonable expectations doctrine, the

Kentucky law mandates a court to find that "the insured is entitled to all the coverage he may

reasonably expect to be provided under the policy," unless "an unequivocally conspicuous, plain

and clear manifestation of the company's intent to exclude coverage" is present.  *Bidwell v.*

*Shelter Mut. Ins. Co.*, 367 S.W.3d 585, 589 (Ky. 2012) (citations omitted).  Accordingly, because

Goldberg contends that the Discovery Clause renders the prior knowledge requirement

ambiguous, it contends that the Court should find that its reasonable expectation of coverage

binding.  In response, Evanston argues that the Discovery Clause does not conflict with its prior

knowledge requirement.  Instead, Evanston contends that the Discovery Clause is designed to

protect the Insured from potential Claims which arise "during the policy period," while the prior

knowledge provision addresses "knowledge that the insured has before the policy takes effect."

[R. 22 at 8-9.]  Consequently, Evanston argues that the terms of its policy are not ambiguous and

that "[Goldberg] could not have reasonably expected coverage […] because of the unequivocal,

unambiguous, and conspicuous terms and conditions of the Policy."  [R. 22 at 11.]

Upon review, the Court declines to grant summary judgment in favor of either party.
First, the Court notes that Goldberg is correct that no evidence is present which indicates that Mr.
Smith "had knowledge" that he had committed a "Wrongful Act."  Under the policy, a
"Wrongful Act" is defined as "any act, error, or omission by the Insured in rendering or failing to
render Professional Legal Services for others […]."  [R. 1-1 at 16.]  In his internal memorandum,
Mr. Smith does not indicate that an act, error, or omission occurred.  Instead, he simply
summarizes his involvement in the matter and the work he had theretofore completed.  [*See* R.
20-2.]  And, despite Evanston's argument to the contrary, the 2019 – 2020 policy does not
preclude coverage for any "alleged" acts, errors, or omissions.  Instead, the policy requires actual
"knowledge" of the existence of an act, error, or omission in rendering or failing to render legal
services.  Accordingly, the Court finds that no genuine issue of material fact exists regarding
whether Mr. Smith "had any knowledge" of his commission of a "Wrongful Act."

Similarly, Goldberg's arguments that the policies' Discovery Clause renders the prior
knowledge requirement ambiguous, and that the reasonable expectations doctrine therefore
applies is unpersuasive.  Ultimately, though the Discovery Clause and prior knowledge
requirement include similar language, the purposes of each clause are apparent and cause no
ambiguity.  First, the Discovery Clause is intended to protect the Insured and guarantee coverage
for issues that may or may not result in a Claim, even after the policy expires, on the condition
that the Insured report potential issues during the policy period.  [*See* R. 1-1 at 19.]  Conversely,
the prior knowledge requirement is intended to allow the Insurer to determine whether any
Claims may arise against the Insured before it agrees to enter into a coverage contract.  [*See* R. 1-
1 at 2; *Bryan Brothers Inc. v. Continental Casualty Co.*, 660 F.3d 827, 831 (4th Cir 2011) ("it is
generally the insured's duty to provide truthful and complete information so the insurer can fairly

evaluate the risk it is contracting to cover.  If the insured fails to comply with a clear condition required by the insurer, it is typically not liable on the policy.").  Although Goldberg asks the Court to find the clauses in conflict, the two clauses control at different times and are more easily analyzed when thought of as part of separate contracts.  For example, for the purposes of this litigation, the Discovery Clause controlled during the 2018 – 2019 policy.  Had Goldberg reported Synergy's email to Evanston under the Discovery Clause, Evanston would be bound to provide it coverage even after the expiration of the 2018 – 2019 policy.  Goldberg, however, chose not to do so.  Consequently, upon the expiration of the 2018 – 2019 policy, Goldberg agreed to the conditions of the 2019 – 2020 policy, which mandated the reporting of any potential claim to allow Evanston to determine whether it wished to insure Goldberg for an additional term.  Accordingly, because the clauses control at different times and serve different purposes, no ambiguity is present.

But nonetheless, no party is owed summary judgment because a genuine issue of material fact exists as to whether "a reasonable person in [Goldberg's] position [would have] conclude[d] that a Claim was likely."  [R. 1-1 at 2.]  Ultimately, this dispute centers around whether Synergy's 2019 email would have put a reasonable person on notice that a "Claim" was likely to be made against Goldberg.  Because the evidence presented to the Court fails to conclusively establish whether a reasonable person would or would not have foreseen a "Claim" (under either component of its contractual definition) to have likely arisen, the issue of indemnification must proceed to trial.  *See, e.g.*, *Kerns v. Encompass Ins. Co.*, 2011 U.S. Dist. LEXIS 8771 at *4 (E.D. Ky. January 28, 2011) (denying summary judgment on a declaratory judgment counterclaim and setting trial date).

12

## C

Separate from their indemnification arguments, each party requests the Court determine whether Evanston must defend Goldberg against Synergy's Claim  [R. 21-1 at 16-18.]  In support of its request for defense, Goldberg argues that, in Kentucky, "the duty to indemnify is narrower than the duty to defend."  [R. 21-1 at 16 (citing *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsb Co.*, 598 F.3d 257, 271-73 (6th Cir. 2010).].  In further support, Goldberg cites *Aetna Casualty*, in which the Kentucky Supreme Court indicated that under "Kentucky law, an insurer has a duty to defend if there is any allegation which potentially, possibly, or might come within the coverage terms of the insurance policy."  179 S.W.3d 830, 841 (Ky. 2005) (citing *St. Paul Fire and Marine Ins.*, 814 S.W.2d at 279).  Because of the existence of that duty, the Supreme Court indicates that insurers must either "defend the claim anyway, while preserving by a reservation of rights letter its right to challenge the coverage at a later date," or, "to elect not to defend […] [but] should coverage be found, [] be liable for 'all damages naturally flowing from' the failure to provide a defense."  *Id.* (citing *Eskridge v. Educator and Executive Insurers, Inc.*, 677 S.W.2d 887 (Ky. 1984)).  And, despite the Court's instruction that an insurer can "elect to not defend" if it chooses, Goldberg requests the court mandate Evanston provide a defense.  [*See* R. 21-1 at 16-17.]

In opposition, Evanston relies on the terms of the 2019 – 2020 policy and argues that the Court must look to the policy itself to determine whether a duty to defend is owed.  [R. 22 at 11-12 (citing *Point/Arc of N. Ky., Inc.*, 154 F. Supp. 3d 503, 508 (E.D. Ky. Dec. 22, 2015).].  Under Section VII of the 2019 – 2020 policy, Evanston has "the right and duty to defend and investigate any Claim to which coverage under this policy applies […]."  [R. 1-1 at 18.]  Consequently, because Evanston contends that no coverage applies to the "Claim" brought by

Synergy against Goldberg, it argues that its duty to defend has not been triggered.  Because the insurance policy in this matter controls, Evanston is correct that it is not required to defend Goldberg at this stage.  Nonetheless, because its duty to defend has been triggered under Kentucky law but has been contractually limited, Evanston may later "be deemed liable for 'all damages naturally flowing from' the failure to provide a defense" if continuation of this litigation reveals that the "Claim" brought by Synergy against Goldberg was properly and timely reported to Evanston under the conditions imposed by the 2019 – 2020 insurance policy.  *Aetna Casualty*, 179 S.W.3d at 841.

## III

Having concluded that there exists a genuine issue of material fact as to whether Evanston must indemnify Goldberg and that Evanston is not required to defend Goldberg (at risk of later liability from having chosen to not do so), the Court **ORDERS** as follows:

1. Evanston's Motion for Summary Judgment [R. 20] is **DENIED**;

2. Goldberg's Motion for Summary Judgment [R. 21] is **DENIED**;

3. This matter is **REFERRED** to the appropriate Magistrate Judge to establish a discovery schedule on the remaining issues and to schedule trial.

This the 7th day of March, 2022.



Gregory F. Van Tatenhove
United States District Judge

14